**SALEM INN, INC., et al.,**
Appellees,

v.

**Louis J. FRANK, Individually and as Police Commissioner of Nassau County, et al., Appellants.**

**No. 629, Docket 73-2436.**

United States Court of Appeals,
Second Circuit.

Argued March 5, 1974.

Decided June 25, 1974.

Joseph H. Darago, Manhasset, N. Y., for appellants.*

Herbert S. Kassner, New York City (Kassner & Detsky, Paul E. Warburgh, Jr., New York City, of counsel), for appellees.

Before LUMBARD, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from the grant of a preliminary injunction by Judge Bartels against the enforcement by the appellants of Local Law No. 1–1973 of the Town of North Hempstead, New York. This ordinance makes it

> unlawful for any person conducting, maintaining, or operating a cabaret, bar and/or lounge, dance hall, or discotheque, or any other public place, . . . to suffer or permit any waitress, barmaid, entertainer, or other person who comes in contact with, or appears before, or is likely to come in contact with or appear before persons with breasts uncovered in such a manner that the position of the breast below the top of the areola is not covered with a fully opaque covering [in other words, "topless"], . . . or to appear in any scene, sketch, act or entertainment with breasts or the lower part of the torso uncovered or so thinly draped as to appear uncovered.[1]

Section 3.0(1), Local Law No. 1–1973, Town of North Hempstead (July 16, 1973). The preliminary injunction was granted at the behest of three different bars, Judge Bartels holding that appellees had sufficiently alleged irreparable harm and that they were likely to succeed on the merits because the ordinance inhibits the full exercise of first amendment freedoms and is overbroad in that "any public place" could include the theater, town hall, opera house, public marketplace, etc., and the ordinance would therefore prohibit performance of a number of works of unquestionable artistic and socially redeeming signifi-

---

* Kenneth C. Butterfield, Town Attorney of the Town of Huntington, filed an *amicus curiae* brief for the Town of Huntington urging reversal.

1. The ordinance's prohibitory section also makes it unlawful for any person to appear with breasts uncovered, etc. Section 3.0(2), Local Law No. 1–1973, Town of North Hempstead, July 16, 1973.

cance such as the "Ballet Africain," "Hair," and the like.

Appellants argue that the district court should have abstained under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Byrne v. Karalexsis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971), and that absent bad faith, harassment or other unusual extenuating circumstances federal injunctive relief should not have been granted. They finally argue that on the merits the ordinance is within local police power and therefore not unconstitutional, with the claimed consequence that preliminary injunctive relief should not have been granted as there is no likelihood of appellees ultimately prevailing on the merits.

We turn to the question whether principles of equity, comity or federalism preclude issuance of a federal injunction restraining enforcement of the North Hempstead ordinance on the basis of its overbreadth pending trial on the merits. To answer this question it is important to understand precisely the situation of the respective appellees at the time the preliminary injunction was sought. The filing of the complaint in this action was instituted immediately after the ordinance became effective. Thereafter an order to show cause why a preliminary injunction should not be granted was signed by Judge Dooling on August 9, 1973. The following day appellee M & L Rest, Inc., which like the other two appellees had covered up its dancers and thereby discontinued topless entertainment, resumed this form of entertainment, and on that day and each of three successive days M & L Rest, Inc., and its dancers were served with criminal summonses for violating the ordinance, a

hearing on which was set in the Nassau County Court for September 13, 1973. The preliminary injunction below was granted on September 6, 1973. The other two appellees, Salem Inn, Inc., and Tim-Rob Bar, Inc., had not resumed topless entertainment prior to the grant of the injunction below. As a result of the ordinance and fear of prosecution thereunder they alleged in their complaint supported by affidavits that the exercise by them and by their dancers of first amendment rights had been chilled and their clientele deprived of the right to view constitutionally protected "expression." They claim, as does M & L Rest, Inc., irreparable injury. In each case as a result of requiring the dancers to wear bikini tops the affidavits contain allegations of "a marked diminution of business" or a "substantial curtailment of our business" which "can result in our having to go out of business." The Tim-Rob Bar alleges that there has been a 50 per cent diminution of business. Again, however, only the M & L Rest, Inc., has had its manager and dancers summoned into court.

 Initially, in answer to the question of the propriety of the injunctive relief granted here, we agree with the district court as to the probability of success on the merits. Dancing is a form of expression protected by the first amendment. Even nude dancing in a bar can be within the constitutional protection of free expression. *See* California v. LaRue, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972) (Rehnquist, J.).[2] To the extent that this expression is constitutionally protected, the Town may not prohibit it. Thus, in California v. LaRue, *supra,* where the Court upheld a regulation forbidding the sale of liquor by the drink where sexually provocative entertainment was performed, it was said, "the critical fact is that California has not forbidden these performances across the board." *Id.* It is, however, just such an "across the board" prohibition which

---

2. Appellants, moreover, have not actually contended that the dancing involved here is obscene.

Local Law No. 1–1973 enacts. As such the ordinance would have to fall.[3] *See also* P. B. I. C., Inc. v. Byrne, 313 F. Supp. 757 (D.Mass.1970) (three-judge court), judgment vacated and remanded to consider mootness, 401 U.S. 987, 91 S.Ct. 1222, 28 L.Ed.2d 526 (1971); Hogge v. Members of City Council, 482 F.2d 575 (4th Cir. 1973), cert. denied sub nom. Joseph v. Blair, 416 U.S. 955, 94 S.Ct. 1968, 40 L.Ed.2d 305 (1974).

■ Next, we also agree with this district court as to the irreparable injury facing appellees in the absence of a preliminary injunction. In a most recent decision of this court, 414 Theater Corp. v. Murphy, No. 73–2327, 499 F.2d 1155, 1159–1160 (2d Cir. 1974), we were faced with a nearly identical claim of irreparable injury. What we said there is applicable here. In short, if the ordinance here with its $500 per day fine were enforced against these appellees, they would be required to continue in business without presenting their form of entertainment (thereby involving a potential deprivation of their and the public's first amendment rights).[4] In that case, they allege, they would also sustain a "substantial loss of business

and threatened bankruptcy."[5] Their option—violating the law to exercise their claimed rights and awaiting prosecution in the New York courts—involves its own loss of economic and personal rights. Here as in 414 Theater Corp. v. Murphy, *supra*, there is sufficient irreparable injury indicated to justify at least the temporary injunction.

■ We are left then with the question of the applicability of the *Younger* sextet to the preliminary injunction sought here. With respect to appellees Tim-Rob Bar and Salem Inn the *Younger* question is in exactly the same posture as encountered by this court in the recent decision, 414 Theater Corp. v. Murphy, *supra*. There too we were faced with a federal action for declaratory and injunctive relief against an overbroad ordinance which was alleged to chill first amendment rights and to cause irreparable harm. There too the district court's grant of preliminary relief was before us for review, challenged on the basis that it violated *Younger's* teaching. In *414 Theater* we affirmed the preliminary injunction, in short because the underlying rationale behind *Younger* did not apply when state prose-

---

3. In reaching such a conclusion, we need not determine that the actual dancing involved in appellees' bars is protected expression. At least with respect to first amendment challenges even those litigants whose activities could be properly prohibited in a closely drawn statute may attack an overbroad statute on its face. Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408, (1972); Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). *See also* Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). And clearly the ordinance as written here would encompass protected expression within its prohibitions. If pressed on the record before us, moreover, we would tend to find the dancing here protected expression. First, as noted above, there is no claim that the dancing here was actually obscene. *Compare* California v. LaRue, 409 U.S. 109, 111, 93 S. Ct. 390, 34 L.Ed.2d 342 (1972). Second, while the entertainment afforded by a nude ballet at Lincoln Center to those who can pay the price may differ vastly in content (as viewed by judges) or in quality (as viewed by critics), it may not differ in sub-

stance from the dance viewed by the person who, having worked overtime for the necessary wherewithal, wants some "entertainment" with his beer or shot of rye.

4. Just the other day the Supreme Court in a censorship case noted that the *reception* of communications was equally protected by the first and fourteenth amendments as its *expression*. , Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (prison mail). In United States v. Cangiano, 491 F.2d 906 (2d Cir. 1974), petition for cert. filed, 42 U.S.L.W. 3596 (U.S. Apr. 11, 1974) (No. 73–1526), the writer pointed out in dissent, *id.* at 915, in a case involving also "freedom of expression and its converse, freedom of consumption of thought or . . . freedom of reception," that one must be careful in making judgments in this area to avoid permitting judgments of taste to become rules of law. 491 F.2d at 914 n. 1. *See* Emerson, The System of Freedom of Expression 492 (1969).

5. The trial court held that "[w]hile this claim has not been established, it has not been denied."

**22**

cutions were not pending when the federal actions were brought. *Id.* at 1160–1163. *See* Steffel v. Thompson, 415 U.S. 452, 460, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974); Lake Carriers' Association v. MacMullan, 406 U.S. 498, 509, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972). Similarly, we find *Younger* inapplicable to Tim-Rob Bar and Salem Inn here, and accordingly affirm the preliminary injunctions as to them.

■ M & L Rest, Inc., poses a slightly different problem. While it is equally true that there was no prosecution pending against M & L when the federal action was *begun,* nevertheless we are faced now with a pending state prosecution begun only one day after the federal action was initiated. Reading both *Younger* and *Steffel* strictly would seem to leave the present situation without a clear decision from the Supreme Court. In *Younger* the Court stated explicitly, 401 U.S. at 41, 91 S.Ct. at 749 (emphasis added),

> We express no view about the circumstances under which federal courts may act when there is no prosecution pending in state courts *at the time the federal proceeding is begun.*

*Steffel,* moreover, which also speaks only to declaratory judgments, clearly is couched in terms of a fact situation where there is no state prosecution pending at the time of the federal consideration on the merits. On the one hand, it might be argued that considerations of comity and federalism would militate in favor of deferring to the pending state prosecution inasmuch as, according to the rationale of *Younger,* the state criminal proceeding is perfectly capable of protecting the constitutional rights of M & L. On the other hand are, it appears to us, more substantial considerations in favor of extending federal protection, at least in this case, to M & L, even though it is subject at this time to a pending state prosecution. One of these considerations is equity. Here M & L, Tim-Rob, and Salem Inn all came equally before the federal court

invoking its jurisdiction and protection; to grant relief to two plaintiffs and not the third because of *subsequent* events largely out of its control would be most inequitable. This is especially true where the result might be contradictory outcomes. Second, there is an element of conservation of judicial energy in treating M & L along with Tim-Rob and Salem Inn. That is to say, there is little or no greater expenditure of effort to determine the merits as to M & L as well as to the other two, and by doing so the federal court will have relieved the state court of the burden of relitigating the identical issue on identical facts. In a federal system such as ours, how a federal court's abstention will increase or decrease the workload of all the courts—state and federal—is not an improper consideration. Third, we cannot ignore that lower federal courts are the "'*primary* and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States.'" Steffel v. Thompson, [94 S.Ct. at 1218] (emphasis original), *quoting* Frankfurter & Landis, The Business of the Supreme Court 65 (1928).) As such, either in the absence of other considerations or in their equipoise, this consideration would tip the scales in favor of federal rather than state adjudication in the M & L case.

■ Finally, we are struck by the practical wisdom of having a clear-cut method of determining when federal courts shall defer to state prosecutions, threatened or pending, and when not. Without such a guide uncertainty and inequitable treatment are bound to result with the possibility of an Alphonse-Gaston routine developing between state and federal courts. The fact of which court is first presented with the question seems a clear-cut, reliable, and equitable guide to which court should adjudicate the merits. Generally, this should result in the most speedy disposition of the merits, which is in both the state's, here the municipality's, and the private party's interest. While in some cases such a rule may result in the proverbial

rush to the courthouse door, it will guard against attempts by state officials to dispossess federal courts of jurisdiction by initiating suits after the federal action has begun, and similarly guard against attempts to avoid state judgment by inveighing for federal protection after initiation of the state criminal prosecution. The certainty of where the power of adjudication properly lies, moreover, is likely to save all courts substantial time. Upon these considerations then and in light of the facts before us, we find the district court did not err in extending its preliminary injunction to include a prohibition against further prosecution of M & L Rest, Inc., pending a trial on the merits.[6] *Cf.* Boraas v. Village of Belle Terre, 476 F.2d 806, 811 (2d Cir. 1973), rev'd on other grounds, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

Judgment affirmed.

LUMBARD, Circuit Judge (dissenting):

I dissent.

Traditional principles of equity, comity, and federalism require that we reverse the district court and permit the pending state criminal prosecution of M & L Rest to proceed.

As Mr. Justice Black emphasized in his opinion for the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), even when there is only a threat of state prosecution, a federal court should not intervene absent a showing of "special circumstances," such as bad faith or harassment on the part of state or local officials. 401 U.S. at 45, 91 S.Ct. 746. *See also* Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926). The reasons for this are two-fold. First, equitable relief traditionally has not been granted where there is an adequate remedy at law. Vindication of constitutional rights in a state criminal proceeding is deemed an adequate legal remedy. The fact that an individual may be compelled to challenge the constitutionality of a state statute or local ordinance in a state criminal proceeding does not constitute the sort of great and immediate irreparable harm that must be shown before a federal court should consider granting equitable relief. Ex parte Young, 209 U.S. 123, 145–147, 28 S.Ct. 441, 52 L.Ed. 714 (1908); Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Second, the overriding interest in federal-state comity and the avoidance of needless friction between the federal and state judicial systems require that due deference to the state judicial process be shown by the federal courts. The state courts are fully capable of fairly and properly adjudicating suits involving federal rights and should be permitted to do so. Douglas v. City of Jeannette, *supra*, 319 U.S. at 163, 63 S.Ct. 877.

Here, plaintiffs have failed to show that they "have been threatened with any injury other than that incidental to

---

6. It is suggested that the statute is susceptible to a limiting or clarifying construction that would avoid the federal constitutional question so as to make abstention appropriate. The argument is that Brandon Shores, Inc. v. Incorporated Village of Greenwood Lake, 68 Misc.2d 343, 325 N.Y.S.2d 957 (Sup.Ct.1971), gave a similar ordinance, on which Local Law No. 1–1973 was based, a narrowing construction. We do not fathom what that narrowing construction was, however. Justice Cerrato said that the Greenwood Lake ordinance was "anything but vague and indefinite. It clearly sets forth the act to be prohibited, who it applies to, the circumstances under which it applies, and the penalty therefor." 325 N.Y.S.2d at 961. In short, he dealt with the question of vagueness; he never came to the question of overbreadth, the flaw in the ordinance before us. In other words, we are asked to abstain on the sheer speculation that state courts might interpret Local Law No. 1–1973 *contrary to its explicit language,* thereby removing the constitutional question. Such speculation does not satisfy the "special circumstances" required to make abstention proper. *See* Zwickler v. Koota, 389 U.S. 241, 249–252, 254, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Baggett v. Bullitt, 377 U.S. 360, 375–378, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

every criminal proceeding brought lawfully and in good faith." *Id.* at 164, 63 S.Ct. at 881. No showing of bad faith, harassment, or any other "special circumstances" has been made. Under the circumstances, there is no reason why the federal courts should now intervene to enjoin an on-going prosecution.

It is, of course, true that the federal complaint requesting injunctive relief was filed one day prior to the commencement of the state criminal proceeding, which was only threatened at that time. On this basis, the majority argues that the need to demonstrate "special circumstances" justifying federal equitable intervention is unnecessary. The distinction urged between threatened and pending state prosecutions, while a useful rule of thumb, should hardly be applied as an absolute rule of law. A hard and fast rule based on this distinction would represent a significant departure from traditional federal equity practice, *e. g.,* Douglas v. City of Jeannette, *supra,* 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943), Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935), Fenner v. Boykin, *supra,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), Ex parte Young, *supra,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Additionally, it would encourage unseemly races to the federal and state courthouses, with each party seeking to commence its action first. The preservation of the delicate balance between the federal and state courts, a consideration of the utmost significance in our judicial system, Younger v. Harris, *supra,* 401 U.S. at 44, 91 S.Ct. 746, would be ill-served by such an approach, which would leave little, if any, room for a careful analysis of the particular, often unique, factors present in each case.

The need for particularized analysis is amply demonstrated by the present case. Here the federal suit was initiated prior to the state prosecution, but by only one day. In their complaint filed in the district court on August 9, 1973, plaintiffs sought a temporary restraining order in addition to a preliminary injunction. While the return date for the motion for a preliminary injunction was set for August 22, thirteen days after the motion was made, the motion for a temporary restraining order against the enforcement of the ordinance in the interim was denied on August 9, the same day it was made and the day before the criminal summons was served on M & L Rest. M & L Rest continued to provide topless entertainment in violation of the local ordinance, although it knew that the federal court, by denial of a temporary restraining order, had explicitly refused to insulate it from state prosecution at least until August 22. The local authorities, too, had reason to believe that at least until the return date for the motion for a preliminary injunction the federal court would not interfere with the enforcement of the ordinance and the prosecution of any violators. When the return date for the motion arrived and an injunction was issued, the state prosecution had already commenced. The criminal summons had been served and a hearing date had been scheduled. Under these circumstances, the interests of federal-state comity could hardly be served by now compelling the state to halt its prosecution of M & L Rest pending a federal court determination of the statute's constitutionality.[1]

As for the two other federal plaintiffs, Tim-Rob Bar and Salem Inn, which are not presently subject to criminal prosecution, the suit against M & L Rest may very well be dispositive of their claim.[2] At a minimum, the state

---

[1.] Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505, (1974) is in no way dispositive here. In Steffel, the Supreme Court made clear that it was not addressing itself to the question of the appropriateness of injunctive relief against threatened and

pending state prosecutions. *Id.* at 462-463, 94 S.Ct. 1209.

[2.] The majority argues that an approach which would deny M & L Rest resort to the federal court for injunctive relief while al-

courts should be afforded an opportunity to decide the ordinance's constitutionality. This is particularly advisable because it seems likely that the statute in question can be given a narrow, constitutional construction by the state courts. For example, were the statute here interpreted as limited to places in which liquor is served, it could be regarded as a legitimate exercise of the local authorities' police power. California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

In this regard, the majority's reliance on 414 Theater Corp. v. Murphy, No. 73-2327, 499 F.2d 1155 (2d Cir. 1974), is misplaced. *414 Theater Corp.* in no way compels us to grant the injunctive relief sought here. Indeed, in that case the federal district court initially denied the request for a preliminary injunction "in order to permit the matter to be litigated in the state courts." 360 F.Supp. 34, 35 (S.D.N.Y.1973). It was only after the state courts had "had ample opportunity to consider the question [of the ordinance's constitutionality] in related cases and [had] declined to do so," *id.* at 36, that *414 Theater Corp.* was permitted to renew its petition for injunctive relief in federal court. Moreover, the injunction was finally issued against a background of threatened harassment by local officials who apparently planned to initiate civil suits against 414 Theater Corp. and other peep show operators, despite an unappealed New York City Criminal Court ruling that the ordinance at issue was unconstitutional. At no time did the procedural setting approximate the situation here, where a state prosecution was going forward at the time of the hearing in the federal court, a prosecution which was based on violations occurring during the period in which the federal court had expressly declined to stay the enforcement of the law.

Of course, the plaintiffs here would be free at some later time to seek relief in federal court upon a showing, for example, that the prosecution in the state court was not proceeding with appropriate speed or that the plaintiffs were being harassed. But barring these or other "special circumstances" the proper course would be to raise the constitutional issues in the state criminal proceedings against M & L Rest.

lowing it for Salem Inn and Tim-Rob Bar, would work an inequitable result, waste judicial resources, and lead to possibly contradictory decisions on the ordinance's constitutionality. The difficulties may all be avoided if the state courts are first permitted the opportunity to construe the ordinance and determine its constitutionality in the state criminal proceeding against M & L Rest.