SALEM INN, INC., and M & L
Rest. Inc., Appellees,

v.

Louis J. FRANK, Individually and as
Police Commissioner of Nassau
County, et al., Appellants.

No. 965, Docket 75–7101.

United States Court of Appeals,
Second Circuit.

Argued June 9, 1975.

Decided Aug. 28, 1975.

Joseph H. Darago, New Hyde Park, N. Y. (Francis F. Doran, Town Atty. of Town of North Hempstead, Manhasset, N. Y., of counsel), for appellant.

Herbert S. Kassner, Kassner & Detsky, New York City, for appellee.

Before FEINBERG, OAKES and VAN GRAAFEILAND, Circuit Judges.

OAKES, Circuit Judge:

The Town of North Hempstead, New York, has had several problems in its efforts to suppress "topless" dancing. The Town originally adopted an ordinance banning such dancing in "any public place." A preliminary injunction issued to prevent enforcement of the ordinance, and the injunction was upheld both by our court, *Salem Inn, Inc. v. Frank*, 501 F.2d 18 (2d Cir. 1974), and by the Supreme Court in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). A month after our court's decision North Hempstead abandoned its first ordinance in favor of a narrower regulation which has also been challenged and is here in issue.[1]

The Town appears to have, either as inhabitants or visitors, a substantial number of people who will patronize bars which provide "topless" entertainment but will not do so if the breasts of the female professional dancers furnishing that entertainment are covered even by bikini tops.[2] The Town is not concerned in its efforts to regulate this situation with obscenity or lewdness,[3] the mere public or open display of nudity,[4] the morals of minors,[5] or topless or even

---

1. We will not comment on the subject of mootness before the Supreme Court in *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

   Chapter 11 of the Code of the Town of North Hempstead §§ 3.1 and 3.2 now provides as follows:

   3.1 It shall be unlawful for any person maintaining, owning or operating a cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop within the Town of North Hempstead:

   a. to suffer or permit any waitress, barmaid, female entertainer or other female person in the employ thereof who appears before or deals with the public in attendance therein to appear in such manner that the portion of her breast below the top of the areola is not covered with a fully opaque cover or that one or both breasts are wholly exposed to view.

   b. to suffer or permit any person in the employ thereof who appears before or deals with the public in attendance therein to appear in such manner as to actually display or simulate the display of the pubic hair, anus, vulva or genitals.

   3.2a It shall be unlawful for any female person to appear in any cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop within the Town of North Hempstead in such a manner that the portion of her breasts below the top of the areola is not covered with a fully opaque cover or that one or both breasts are wholly exposed to view.

   b. It shall be unlawful for any person to appear in any cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop within the Town of North Hempstead in such a manner as to actually display or simulate the display of the pubic hair, anus, vulva or genitals.

2. Sworn affidavits by Nicholas Benevento, the president of M & L Rest., Inc.; Emma Glenn, the president of Salem Inn, Inc.; and Fred Glenn, the manager of the Salem Inn, state that after the enactment of the ordinance here at issue, requiring the dancers at their businesses to wear bikini tops, daily gross receipts were reduced as much as 90 per cent. Both establishments claim that enforcement of the ordinance would eventually put them out of business. "Bottomless" dancing, while prohibited by the ordinance, is in no way involved in this case.

3. The statute in question does not purport to classify the prohibited activity as obscene. Nudity, or, more accurately, the commercial exploitation of nudity, is what the Town claims the ordinance intends to regulate. Note 1 *supra*.

4. The parties agree that the dancing at the bars could not be seen from the street. Thus, the nudity here at issue is distinguishable from the kind of public nudity subject to prosecution under indecent exposure statutes. *See Erznoznik v. City of Jacksonville, —— U.S. ——, —— n.7, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); Roth v. United States*, 354 U.S. 476, 512, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) (Douglas, *J.*, dissenting).

5. The establishments here in issue admit only adults.

bottomless displays of the anatomy in an opera house, theater, playhouse or concert hall, ballet or movie.[6] Rather, the concern of the local government is with the conduct of the owners and operators of places serving either food or alcoholic beverages and, indirectly but perhaps more accurately, with the morals[7] of their adult customers.

The ordinance now in issue was enacted in an effort to cure the unconstitutional overbreadth of North Hempstead's Local Law No. 1, found in *Salem Inn, Inc. v. Frank, supra* (affirmed in parts here relevant by *Doran v. Salem Inn, Inc., supra*). By banning topless dancing only in every "cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop within the Town of North Hempstead," the Town's aim was to narrow the broad reach of the ordinance sufficiently to meet constitutional muster. Judge John R. Bartels, of the United States District Court for the Eastern District of New York, held, first in issuing a temporary injunction and then in an order granting summary

judgment and a permanent injunction, that the revised ordinance was still subject to the constitutional vice of First Amendment overbreadth since its sweep includes "communicative dancing and theatrical products," its thrust relating only to *nudity,* not *obscenity.* Judge Bartels also considered the ordinance to be in violation of the equal protection clause of the Fourteenth Amendment because, *e. g.,* burlesque theaters might operate legally while a cabaret could not stage a production of "Hair." Judge Bartels found that the ordinance was not justified as an exercise of delegated Twenty-first Amendment state power, first because there is not involved the kind of conduct properly subject to regulation as a phase of liquor-licensing, *see California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) ("Bacchanalian revelries," sexual contact between entertainers and customers, prostitution),[8] and second because the instant ordinance applies to places *not* serving alcoholic beverages such as coffee shops, restaurants, dance halls and discotheques.[9] We agree with Judge Bartels in all respects and accordingly affirm.[10]

6. *See* note 1 *supra.*

7. Chapter 11 of the Code of the Town of North Hempstead provides in part:

Section 1.0 Legislative Purpose—

The Town Board of the Town of North Hempstead does hereby find that there exists in this Town an increasing trend toward nude and semi-nude acts, exhibitions and entertainment, and of undress by female employees of bars and restaurants where food or alcoholic beverages are sold to the public, and that such acts and such competitive commercial exploitation of nudity is adverse to the public peace, morals and good order; that it is in the best interest of the public safety and welfare of this Town to restrict such nudity and the commercial promotion and exploitation thereof in bars and restaurants where food or alcoholic beverages are sold, as hereinafter set forth.

The Town Board of the Town of North Hempstead further finds that it is solely within the powers of the State of New York as delegated to the State Liquor Authority to regulate and control the manufacture, sale and distribution within the State of alcoholic beverages, for the purpose of fostering and promoting temperance in their consumption and respect for and obedience to law; and

that the same should be augmented not inconsistent with State power by local regulation of conduct of persons engaged in the sale to the public of food and drink and alcoholic beverages, and those persons who are in their employ.

It is, therefore, declared to be the policy of the Town Board of the Town of North Hempstead that in order to preserve public peace and good order, and to *safeguard* the health, safety, welfare and *morals* within the unincorporated area of the Town of North Hempstead, it is necessary to regulate and control the conduct of owners and operators of cabarets, bars, lounges, dance halls, discotheques and places which serve food or alcoholic beverages so as to fix certain responsibilities and duties of persons owning, operating or controlling such establishments and all persons employed, whether for hire or not, in such establishments.
(Emphasis added.)

8. *Salem Inn, Inc. v. Frank,* 381 F.Supp. 859, 863 (E.D.N.Y.1974).

9. While restrictions applied only to places serving alcoholic beverages have been up-

10. See note 10 on page 1048.

■ On the sweep of the ordinance, we recognize that there is only a modicum of expression involved in the conduct of appellees' dancers. But that modicum is one of constitutional significance, both to the dancers who earn a livelihood by providing their particular form of entertainment, and, perhaps more, to the customers of the appellees' establishments who for a variety of reasons, which may include the lack of economic means or mere differences in inclination, choose not to avail themselves of diversions deemed more tasteful or culturally rewarding by others.[11] As we said in *Salem Inn, Inc. v. Frank,* 501 F.2d at 21, n.3:

> held in certain circumstances involving the Twenty-first Amendment, *California v. LaRue, supra; Paladino v. City of Omaha,* 471 F.2d 812 (8th Cir. 1972); *Salem v. Liquor Control Comm.,* 34 Ohio St.2d 244, 298 N.E.2d 138 (1973), the ordinance here applies its restrictions to coffee shops, restaurants and even dance halls and discotheques. It is difficult to determine what compelling state interest could be served by an ordinance which would bar a production of "Hair" at a cabaret and allow nude dancing in a burlesque theater.

*Salem Inn, Inc. v. Frank,* 381 F.Supp. at 864. Even if we may assume that the State of New York has delegated its authority under the Twenty-first Amendment to towns such as North Hempstead, and that the ordinance would therefore be constitutionally valid under [*California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972)], if limited to places dispensing alcoholic beverages, the ordinance in this case is not so limited. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 933, 95 S.Ct. 2561, 2569, 45 L.Ed.2d 648 (1975).

10. Appellees have complied with the ordinance here at issue and have shown likelihood of success on the merits. Their economic loss from compliance with the ordinance coupled with the Town's threat of prosecution upon violation gives appellees a justiciable interest in preventing future enforcement of the ordinance against them. In view of the above, issuance of the injunction was entirely proper under the recent decision in *Doran v. Salem Inn, Inc.,* 422 U.S. at 930–932, 95 S.Ct. 2561.

11. *Cf.* F. Dunne, Mr. Dooley on the Choice of Law 176–77 (E. Bander ed. 1963):

> Th' rayformer . . . thinks you an' me, Hinnissy, has been watchin' his spotless ca-

[W]hile the entertainment afforded by a nude ballet at Lincoln Center to those who can pay the price may differ vastly in content (as viewed by judges) or in quality (as viewed by critics), it may not differ in substance from the dance viewed by the person who, having worked overtime for the necessary wherewithal, wants some "entertainment" with his beer or shot of rye.

Judge Bartels correctly divined our meaning by this that, however much topless dancing may be regarded by some to be in the teeth of good taste, it is, on the record here, a harmless form of diversion

> reer f'r twenty years, that we've read all he had to say on th' evils iv pop'lar sufferage before th' Society f'r the Bewildermint iv th' Poor, an' that we're achin' in ivry joint to have him dhrag us be th' hair iv th' head fr'm th' flowin' bowl an' th' short card game, make good citizens iv us an' sind us to th' pinitinchry. So th' minyit he gets into th' job he begins a furyous attimpt to convart us into what we've been thryin' not to be iver since we come into th' wurruld.
>
> In th' coorse iv th' twenty years that he spint attimptin' to get office, he managed to poke a few warrum laws conthrollin' th' pleasures iv th' poor into th' stachoo book, because no wan cared about thim or because they made business betther f'r th' polis, an' whin he's in office, he calls up th' Cap'n iv the polis an' says he: "If these laws ar-re bad laws th' way to end thim is to enfoorce thim." Somebody told him that, Hinnissy. It isn't thrue, d'ye mind. I don't care who said it, not if 'twas Willum Shakespere. It isn't thrue. Laws ar-re made to throuble people an' th' more throuble they make th' longer they stay on th' stachoo book. But th' polis don't ast anny questions. Says they: "They'll be less money in th' job but we need some recreation," an' that night a big copper comes down th' sthreet, sees me settin' out on th' front stoop with me countenance dhraped with a tin pail, fans me with his club an' runs me in. Th' woman nex' dure is locked up f'r sthringin' a clothes line on th' roof, Hannigan's boy Tim gets tin days f'r keepin' a goat, th' polis resarves are called out to protict th' vested rights iv property against th' haynyous pushcart man, th' stations is crowded with felons charged with maintainin' a hose conthrary to th' stachoos made an' provided, an' th' tindherline is all over town. . . .

or entertainment, by way of communication from one human being to others. That interchange of communication is subject to constitutional protection so long as some legitimate interest of the State (or community) or others is not infringed upon.[12]

■ The ordinance here is really directed at the display of the partially nude female form in a place which no minor can enter (under the undisputed allegations below) and no adult who is offended by the sight, or the thought, of commercial exploitation of the human body need enter (since advertising outside the establishment indicates what the entertainment will be). Here more readily even than in *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (public traveling past outdoor drive-in theater), the adult who would be offended may "avoid further bombardment of [his] sensibilities simply by averting [his] eyes." *Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284 (1971), *quoted in Erznoznik v. City of Jacksonville*, 422 U.S. at 211, 95 S.Ct. at 2273. Appellees, like the movie theater proprietors in *Erznoznik*, operate a commercial enterprise[13] and while "[m]uch that we encounter offends our esthetic, if not our political and moral, sensibilities," *id.,* "when the government, acting as censor, undertakes selectively to shield the public from some kinds of [expression] on the ground that they are more offensive than others, the First Amendment strictly limits its power." *Id.* We reemphasize that the ordinance here is directed not at lewdness or obscenity but at nudity which, the Court has reminded us, is not per se "obscene even as to minors." *Id.* at 213, 95 S.Ct. at 2275.

■ On the equal protection point the Town urges that the rational relationship test of *Reed v. Reed,* 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), is applicable, *cf. Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), because the ordinance was directed at nudity, not at the right of expression. Even if this argument were correct the ordinance would fall because the Town has failed to show any legitimate underlying municipal interest to which its discrimination among various commercial establishments can be rationally related. *See Doran v. Salem Inn, Inc.,* 422 U.S. at 933–934, 95 S.Ct. 2561. Accordingly, even under the limited scrutiny of *Reed* the ordinance cannot be upheld. We agree with Judge Bartels, however, that the modicum of expression involved in topless dancing puts this case into the other "tier" of equal protection, where "strict scrutiny" of the ordinance must be made. Since the Town has shown no compelling justification for differentiating between one interest in expression (topless dancing in a bar) and another (topless dancing in the "legitimate" theater), the burden on the interests of expression implicit in commercial distinctions in this ordinance makes the Town's scheme constitutionally impermissible. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968). If the Town is between the Scylla of overbreadth and the Charybdis of unequal protection, this is because it is attempting to regulate matters which the First Amendment leaves to personal choice.

■ Finally, to the extent that the ordinance in its preamble[14] or the Town in its brief relies upon the suggestion in *Doran v. Salem Inn, Inc., supra,* that the

12. Judge Bartels correctly noted that noise, litter and conduct of patrons complained of by the North Hempstead public may be reached by other legitimate ordinances or enforcement of existing ones or by hours regulations. But the town fathers seem bent on proceeding against topless dancing per se.

13. As such they have a sufficient interest to assert the invalidity of the ordinance, contrary to the Town's assertion that only the dancers themselves have that right.

14. *See* note 7 *supra.*

1050

Twenty-first Amendment may validate the ordinance, see note 9 supra, we agree with Judge Bartels that the ordinance was not adequately limited in its impact. The Twenty-first Amendment does not justify regulatory control over places that serve only food or which provide entertainment but not alcoholic beverages.

Judgment affirmed.