Bernard HUGHES, t/a Three Captains
House of Seafood et al.

v.

Susanna K. CRISTOFANE, Mayor, et al.

Civ. No. HM80–371.

United States District Court,
D. Maryland.

Feb. 22, 1980.

On Motion for Preliminary Injunction
March 13, 1980.

Russell W. Shipley, Lawrence N. Taub, Landover, Md., for plaintiffs.

James E. Kenkel, Upper Marlboro, Md., for defendants.

## MEMORANDUM OPINION

HERBERT F. MURRAY, District Judge.

The plaintiffs are the owners and major shareholders of the Three Captains House of Seafood Restaurant in Bladensburg, Maryland; the defendants are the mayor and town councilmen of Bladensburg. The plaintiffs, whose restaurant has until recently provided entertainment in the form of "topless" dancing, seek a temporary restraining order enjoining enforcement of a recently-enacted Bladensburg town ordinance which prohibits such entertainment in establishments that serve alcoholic beverages or food. After hearing oral argument on the matter from both sides, and having considered the applicable law, the court has concluded that the restraining order should issue as the plaintiffs have requested.

The ordinance in question, Ordinance 3–80, first recites the concern of the residents and Town Council of Bladensburg with the "many problems" incident to the operation of businesses serving alcoholic beverages or food and providing "topless or semi-nude entertainment." The language contains no specific explanation of what the "many problems" are. Invoking the Council's "broad police powers and licensing powers," the ordinance then requires that "all businesses offering live entertainment and serving alcoholic beverages or food" obtain a

town entertainment license. The law goes on to proscribe the following conduct:

2. *Attire of performers and food or beverage servers in Licensed Premises* —It shall be unlawful for any person serving food or alcoholic beverages, or performing for the public, or whose duties consist primarily of dancing, walking or posing before customers, in any business required herein to be licensed, whether during the performance or at any time while on the premises of such licensed business, to publicly and knowingly display:

a. The genitals or any portion thereof.

b. Any portion of public [sic] hairs, including the shaved pubic hair line or area.

c. The buttocks, including any portion of the cleavage between the buttocks.

d. Any portion of the areola or papilla of the female breast or any area of the female breast below said portions.

3. *Conduct of performers and food or beverage servers in licensed premises* —It shall be unlawful for any person serving food or beverages, or performing for the public, or whose duties consist primarily of dancing, walking or posing before customers, while on the premises of such licensed business to publicly and knowingly:

a. Commit or simulate any sexual act such as sexual intercourse, masturbation, fellatio, cunnilingus, sodomy or any unnatural sexual act, whether acting alone or with any other person.

b. Sit, drink, or dine with any patron or perform closer than six (6) feet from any patron.

c. Contact any person or other performers by touching, caressing or fondling the breast, buttocks, anus or genitals of any patron or other performer.

Any person who engages in any of the proscribed conduct, or suffers the conduct to be engaged in on licensed premises, is subject to a fine or imprisonment or both, and to possible revocation of his or her entertainment license. The plaintiffs contend that the ordinance is overbroad, and that it deprives them of their rights under the first and fourteenth amendments to the Federal Constitution. Their claim is brought under 42 U.S.C. § 1983.

■ The initial question for a federal court confronted with a challenge to the constitutionality of a state or municipal ordinance is whether considerations of comity and federalism require the court to abstain from deciding the matter until an appropriate state court has had an opportunity to resolve the dispute. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The court does not find abstention appropriate in this case under either the *Younger* doctrine or the *Pullman* doctrine.

■ According to the principles of *Younger*, a federal court should not enjoin any state criminal or civil proceeding pending against the party seeking federal relief. *Younger v. Harris, supra; Huffman v. Pursue*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). The rationale of the *Younger* doctrine is that a federal court should not interfere with an ongoing state proceeding before the state forum has had an opportunity to decide the matters at issue. However, in the present case, none of the three plaintiffs is presently involved in a state court proceeding of any kind. Furthermore, the plaintiffs have satisfied the court that the threat of their being prosecuted under Ordinance 3–80 is substantial and immediate. *Younger v. Harris, supra*, 401 U.S. at 41–42, 91 S.Ct. at 749–750; *Steffel v. Thompson*, 415 U.S. 452, 458–59, 94 S.Ct. 1209, 1214–15, 39 L.Ed.2d 505 (1974). Three of the dancers employed by the plaintiffs have already been arrested under the new law, and since the last arrest on February 14th, the police have visited the plaintiffs' restaurant at least once a day. Although the dancers have apparently been instructed to wear halter tops in order to comply with the ordinance, the court finds that the three arrests already made and the repeated visits of the police create enough of a threat of prosecution to give the plaintiffs standing in this court.

Because the plaintiffs have made out a justiciable case or controversy, and are not involved in any pending state proceedings, nothing in the *Younger* line of cases prohibits this court from granting the relief requested.

Similarly, the court can find no basis for abstaining under the "*Pullman* doctrine." If the law at issue were subject to two interpretations, and a state court might therefore be able to interpret it in such a way as to avoid any constitutional issue, this court would take no action until the state court had had an opportunity to consider the ordinance. *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *United Steelworkers of America v. Bagwell*, 383 F.2d 492 (4th Cir. 1967). However, this court finds the law to be susceptible of only one meaning, which unambiguously raises the constitutional issues discussed below. Accordingly, abstention is inappropriate.

In order to obtain relief by a temporary restraining order under Rule 65 of the Federal Rules, the plaintiffs must show:

(1) that unless the restraining order issues, they will suffer irreparable harm;

(2) that the hardship they will suffer absent the order outweighs any hardship the defendants would suffer if the order were to issue;

(3) that they are likely to succeed on the merits of their claims;

(4) that the issuance of the order will cause no substantial harm to the public; and

(5) that they have no adequate remedy at law.

*See Blackwelder Furniture Co., Etc. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977). *See also Thompson Van Lines, Inc. v. United States*, 381 F.Supp. 184 (D.D.C.1974); *North Carolina State Ports Authority v. Dart Containerline Co., Ltd.*, 592 F.2d 749 (4th Cir. 1979). The plaintiffs have satisfied each of the prerequisites.

If a restraining order did not issue, the owners of the Three Captains Restaurant would suffer irreparable harm both to their financial interests and to their interest in the free exercise of constitutional rights. According to the affidavit of plaintiff Bernard Hughes, filed with the court on February 20, 1980, the gross income of his restaurant was "generally" over $1000 and rarely less than $800 per day before he clothed his dancers on February 14th in order to comply with Ordinance 3–80. Since he has complied, the business has averaged $700 a day. Because Mr. Hughes requires at least $750 to $800 gross income per day to meet expenses, he has been operating at a loss since the topless dancing ceased. He anticipates that his business may fail if the dancers must continue to comply with the ordinance. Other courts have found that loss of revenue, when specifically described, constitutes irreparable harm, and this court believes Mr. Hughes has made an adequate showing under that standard. *Salem Inn, Inc. v. Frank*, 408 F.Supp. 852 (E.D.N.Y. 1976). Cf. *Frejlach v. Butler*, 573 F.2d 1026 (8th Cir. 1978); *C'est Bon, Inc. v. North Carolina State Board of Alcoholic Control*, 325 F.Supp. 404 (W.D.N.C.1971).

More importantly, the plaintiffs have made an adequate showing that if enforcement of the ordinance is not enjoined, the law might operate to infringe the first and fourteenth amendment freedoms not only of the plaintiffs, but also of other proprietors and entertainers subject to the law's requirements. Such a showing satisfies not only the irreparable harm requirement, *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. 1978), but also the likelihood-of-success requirement.

In the first place, the weight of authority in the federal courts is that nude dancing which cannot be characterized as obscene is a form of expression entitled to some protection under the first amendment. *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Salem Inn, Inc. v. Frank*, 522 F.2d 1045 (2d Cir. 1975); *Attwood v. Pur-*

*cell,* 402 F.Supp. 231 (D.Ariz.1975); *Clark v. City of Fremont,* 377 F.Supp. 327 (D.Neb. 1974); *Wood v. Moore,* 350 F.Supp. 29 (W.D.N.C.1972). *See also Maita v. Whitmore,* 365 F.Supp. 1331 (N.D.Cal.1973), *rev'd on other grounds,* 508 F.2d 143 (9th Cir. 1974), *cert. denied,* 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975) (conduct not protected because obscene). *But see Paladino v. City of Omaha,* 335 F.Supp. 897 (D.Neb.), *aff'd on different reasoning,* 471 F.2d 812 (8th Cir. 1972); *Hodges v. Fitle,* 332 F.Supp. 504 (D.Neb.1971). Although several state courts have held nude dancing not to be protected under the first amendment, those cases are arguably distinguishable on their facts, and do not necessarily support the proposition that topless dancing *per se* is never protected expression. *See* the cases collected in 49 A.L.R.3d 1084 (1973).

The defendants in this case cite *California v. LaRue, supra,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), as authority for their argument that topless dancing is at best only minimally protected, and may be broadly regulated in connection with the consumption of alcohol. The Supreme Court in *LaRue* held that a state's broad powers under the twenty-first amendment to regulate distribution of alcohol gave the state similarly broad discretion to curtail nude entertainment where alcohol was served, even if the entertainment might in certain circumstances fall within the sphere of the first amendment. In light of the state's broad authority, the Court applied a rational relationship test to the challenged California law, and found it to be rational. 409 U.S. at 118, 93 S.Ct. at 397.

The facts of the present case are sufficiently distinguishable from those of *LaRue* to persuade this court that *LaRue* may not defeat the plaintiffs' first amendment claims. As far as the court has been able to determine, the Town of Bladensburg does not have any regulatory powers under the twenty-first amendment. The authority to issue liquor licenses in Bladensburg is vested in the Board of License Commissioners for Prince George's County. Md.Code Ann. Art. 2B, §§ 1, 60 (1976). That board issued the plaintiffs' liquor license with no restrictions on nude entertainment. As the Eighth Circuit held in *Felix v. Young,* 536 F.2d 1126 (8th Cir. 1976), where the twenty-first amendment is not implicated in the regulation of nude entertainment, a stricter standard of scrutiny is required.

The plaintiffs have also made an adequate showing that Ordinance 3–80 may be unconstitutionally overbroad, and may violate principles of equal protection. *Salem Inn, Inc. v. Frank, supra,* 522 F.2d 1045 (2d Cir. 1975). The law purports to prohibit topless dancing in all business establishments serving liquor *or* food. Even if *LaRue* were otherwise applicable, the defendants have made no showing that first amendment activity can be constitutionally curtailed merely because food is served on the premises. Furthermore, the language of the ordinance on its face may sweep in activity which is clearly entitled to first amendment protection, such as a performance of the play "Equus" at a legitimate dinner theater. As for the equal protection problems, the defendants have not satisfactorily explained why there is even a rational basis for, much less a compelling state interest in discriminating between an establishment that offers food and nude entertainment, and an establishment that offers such entertainment with only soft drinks or no refreshment at all. Although the court voices no opinion about the ultimate outcome of the case, the constitutional issues raised are substantial enough to justify affording the plaintiffs temporary relief.

The defendants argue that the "separability clause" is sufficient to save the ordinance. The clause states that if any part of the law should be found unconstitutional, that part shall be deemed a separate and independent provision. However, even if the words "or food" were eliminated from the ordinance, the town's powers under the twenty-first amendment would still be in doubt, and serious constitutional problems would remain. Nor does the court see how the equal protection problems could be cured by even radical surgery.

Similarly, there is no merit to the defendants' claim that because the law is constitutional as applied to these plaintiffs, they lack standing to challenge it. Even assuming the plaintiffs are in the posture the defendants allege, it is well-established that a plaintiff who alleges the overbreadth of a statute may maintain an action although the law may be constitutional as applied to him. *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Doran v. Salem Inn, Inc., supra*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

■ Given the plaintiffs' substantial showing of threatened irreparable harm, it is not difficult to conclude that the balance of hardships tips in the plaintiffs' favor. If the temporary restraining order should issue, the only resulting hardship to the defendants will be a return to the status quo before the ordinance took effect. Because the defendants have not shown that the status quo injured anything other than their moral sensibilities, the court feels that the importance of the plaintiffs' constitutional rights outweighs the defendants' interests.[1] For the same reasons, the court finds that enjoining the enforcement of Ordinance 3–80 will not substantially harm the public interest.

The plaintiffs have also satisfied the court that they have no adequate remedy at law. If the status quo is not preserved, the passage of time required to litigate the plaintiffs' claims will work the irreparable injury the plaintiffs have described.

The plaintiffs have thus met all the prerequisites for obtaining a temporary restraining order. The court is mindful that the remedy is an extraordinary one, but is persuaded that the case presents the urgency and special circumstances that make extraordinary relief necessary.

Accordingly, the Town of Bladensburg and its agents will be temporarily enjoined from enforcing Ordinance 3–80, and the court will issue a separate order to that effect. However, nothing in this opinion or in the order should be deemed to affect any state proceedings stemming from enforcement of the ordinance prior to today's date.

## ORDER

For the reasons set forth in the Memorandum Opinion dated this 22nd day of February, 1980, it is this same date, by the United States District Court for the District of Maryland,

*ORDERED:*

(1) that the plaintiffs' request for a temporary restraining order be, and the same hereby is, *Granted*;

(2) that effective immediately, defendants Mayor and Councilmen of the Town of Bladensburg and their agents be, and the same hereby are *Restrained* from enforcing Ordinance 3–80 of the Town of Bladensburg for a period of ten days from the date of this Order;

(3) that plaintiffs give security by filing forthwith with the Clerk of this Court a bond in the sum of $500.00 for the payment of such costs and damages as may be incurred or suffered by defendants if found to be wrongfully enjoined or restrained;

(4) that this matter be heard on plaintiffs' request for preliminary injunction at 4:30 p. m. on Monday, March 3, 1980.

## MEMORANDUM OPINION

### On Motion For Preliminary Injunction

At issue in this case is the constitutionality of Bladensburg Town Ordinance 3–80, which prohibits nude or semi-nude entertainment in any establishment serving alcoholic beverages or food within the Town of Bladensburg, Maryland. The plaintiffs are the three major shareholders of a restaurant-bar which offers the proscribed entertainment; the defendants are the mayor and town councilmen of Bladensburg. The facts are set out in more detail in the court's Memorandum Opinion of February

---

1. The court does not mean to imply that the town's moral concerns are frivolous, but only that they are not of constitutional dimension.

22, 1980. On that date, the court granted the plaintiffs a temporary restraining order, enjoining enforcement of the ordinance for a period of ten days. After a hearing on the plaintiffs' motion for a preliminary injunction held on March 3, 1980, the court extended the restraining order for another ten days so that counsel could submit additional memoranda on certain jurisdictional questions. Having considered all the memoranda submitted, as well as the testimony and oral arguments presented at the March 3d hearing, the court has concluded that the preliminary injunction must be granted pending a resolution of the dispute on the merits.

■ At the outset, certain issues of jurisdiction and standing must be settled. In its earlier opinion, the court found that the doctrines of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), did not apply to the facts of this case, and that the federal court could proceed without impermissibly interfering in any pending state court proceeding. However, at the March 3d hearing, the parties disclosed to the court for the first time that the plaintiffs have been involved since April of 1979 in litigation concerning the renewal of their liquor license. Although that dispute has not directly involved Ordinance 3–80, the focus of the dispute is the nude entertainment at the plaintiffs' restaurant.

Despite the related issues in this case and the liquor license proceeding, the court is of the opinion that the state litigation raises no problems of comity or federalism which under *Younger* would prevent this court from issuing a preliminary injunction. Because the liquor licensing authority is not applying Ordinance 3–80 to the plaintiffs, the license renewal proceeding is not an appropriate forum in which the plaintiffs might raise their constitutional challenges to the ordinance before seeking relief in federal court. Furthermore, whatever the outcome of the state proceeding, it will shed no light on the *town's* power to regulate entertainment in bars and restaurants through a law such as the ordinance in question. This court's consideration of the plaintiffs' federal claims is therefore distinct from, and will not interfere with, the liquor license litigation.

At oral argument, counsel for the defendants raised another *Younger* issue: he contended that as long as the ordinance itself was the subject of state litigation, the federal court should not consider the constitutionality of that ordinance, regardless of whether any of the federal plaintiffs were involved in the state proceeding. Defense counsel alluded to the pending prosecutions of three of the plaintiffs' dancers under Ordinance 3–80, and cited the following language in a footnote in *Younger*:

> For the reasons stated in our opinion today in *Samuels v. Mackell, post*, p. 66 [401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971)], we hold that declaratory relief is also improper when a prosecution *involving the challenged statute* is pending in state court at the time the federal suit is initiated. 401 U.S. at 41 n. 2, 91 S.Ct. at 749 n. 2 (emphasis added).

Contrary to the defendants' theory, Supreme Court cases decided since *Younger* and *Samuels* make it clear that the controlling issue in circumstances such as those here is whether there is a pending proceeding involving the particular federal plaintiff. *Steffel v. Thompson*, 415 U.S. 452, 472–73 and 475, 94 S.Ct. 1209, 1222 and 1223, 39 L.Ed.2d 505 (1974); *Doran v. Salem Inn*, 422 U.S. 922, 928–30, 95 S.Ct. 2561, 2566–67, 45 L.Ed.2d 648 (1975). The court does not believe that the plaintiffs' interests in challenging the statute are so indistinguishable from those of the dancers that everyone should be "thrown into the same hopper" for *Younger* purposes. *Doran, supra*, 422 U.S. at 928, 95 S.Ct. at 2566.

■ The defendants also argued at the March 3d hearing that the plaintiffs have no standing to bring a federal court action, because they were never actually threatened with prosecution under the ordinance, and because no prosecution was actually contemplated. The court remains convinced that the arrests of three of the plaintiffs' dancers, the repeated visits of the police to the restaurant thereafter, and the

applicability of the statute's penalties to "any licensee who shall suffer [an unlawful] act to be committed on any licensed premises," constitute a sufficient threat of prosecution to meet the standing requirements. *Younger, supra,* 401 U.S. at 41–42, 91 S.Ct. at 749; *Steffel, supra,* 415 U.S. at 458–59, 94 S.Ct. at 1215.[1]

There remains open another standing question. In the opinion of February 22d, the court found that even if the ordinance were constitutional as applied to the plaintiffs, they would have standing to challenge it on the grounds it was facially overbroad. Memorandum Opinion at 7. However, further scrutiny of the question shows that where first amendment rights other than "pure speech" are at issue, the special standing rules of *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), probably do not apply. The standard set forth in *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917–2918, 37 L.Ed.2d 830 (1973), seems likely to preclude the plaintiffs in this case from launching a facial-overbreadth attack:

> [F]acial overbreadth adjudication is an exception to our traditional rules of practice and . . . its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from "pure speech" toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe.

Nonetheless, the plaintiffs still have standing to challenge the constitutionality of Ordinance 3–80 as it applies to them, because of the threat of prosecution already noted.

■ Having disposed of the threshold issues of federal jurisdiction and standing, the court will next consider the standards for a grant of a preliminary injunction. The leading case in the Fourth Circuit is *Blackwelder Furniture Co. v. Seilig Manufacturing Co., Inc.,* 550 F.2d 189 (4th Cir. 1977). *Blackwelder* holds that the first step for the trial court is to balance the likelihood of irreparable harm to the plaintiff against the likelihood of harm to the defendant. If the balance tips decidedly in the plaintiff's favor—that is, if the harm to the plaintiff is likely to be significantly greater—then the trial court need not apply the "likelihood of success" test. Instead,

> it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair grounds for litigation and thus for more deliberate investigation.

550 F.2d at 195, *quoting Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir. 1953).

> The importance of probability of success increases as the probability of irreparable injury diminishes; and where the latter may be characterized as simply "possible," the former can be decisive. Even so, it remains merely one "strong factor" to be weighed alongside both the likely harm to the defendant and the public interest.

550 F.2d at 195 (citations omitted).

■ Applying that test to the present case, the court finds that the balance of hardships does tip decidedly in the plaintiffs' favor. At the March 3d hearing, the defendants presented testimony which

---

1. The parties disclosed at the March 3d hearing that the plaintiffs have never obtained the entertainment license required under Ordinance 3–80. Although the plaintiffs are therefore technically not licensees subject to the penalties of the law, the ordinance clearly applies to them in every other respect and has been enforced against three of their dancers. Under those circumstances, the plaintiffs' lack of a license is an insufficient basis for denying them standing.

tended to show that a restaurant offering topless entertainment had a "blighting" effect on the surrounding area, and was inconsistent with the town's plan to upgrade and revitalize that area. The defendants argued that their interest in improving the quality and character of the town and injecting new economic life into the area of the plaintiffs' restaurant would be seriously harmed if the nude dancing continued. The defendants also referred to the adverse impact the nude dancing would have on the schools, library and family restaurant within close proximity to the plaintiffs' establishment. There is also evidence in the record, as there was when the temporary restraining order was granted, that the moral sensibilities and preferences of many Bladensburg residents will be offended if the ordinance is not enforced.

Although the defendants' concerns are certainly important, they are unlikely to suffer irreparable harm if the enforcement of Ordinance 3–80 is preliminarily enjoined. The defendants will be required only to return to the status quo before the ordinance took effect in January. Because the plaintiffs have offered topless dancing since late 1978 with no significant "blighting" effect or moral corruption that the defendants can describe, the court finds it unlikely that the problems will become irreversible during the course of this litigation.

On the other side of the balance is the irreparable financial harm the plaintiffs claim they will suffer if their dancers are clothed, and the harm to the plaintiffs' first amendment interests if the entertainment they choose to provide is prohibited. As the court noted in its earlier opinion, financial harm of the type the plaintiffs describe may be sufficient to warrant injunctive relief. Memorandum Opinion at 544. Despite the defendants' attempts to discredit the plaintiffs' description of their financial position, the court sees no reason to reject or suspect Mr. Hughes' affidavit concerning the plaintiffs' monetary harm. Nevertheless, the heart of the irreparable harm question with respect to the plaintiffs is their assertion that Ordinance 3–80 threatens their first amendment rights. Because the court believes that assertion is not clearly wrong, the court finds that the plaintiffs have shown a likelihood of irreparable harm that decidedly outweighs the possible harm to the defendants' interests. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *Johnson v. Bergland*, 586 F.2d 993, 995 (4th Cir. 1978).

Although the plaintiffs' showing that first amendment rights *may* be implicated is sufficient to satisfy the irreparable harm requirement, the court does not mean to voice any opinion on the ultimate outcome of the case. The argument raised by the defendants, that Ordinance 3–80 regulates primarily conduct and only peripherally affects expression, has not been clearly decided in earlier cases. *See United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *Cf. Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct 2440, 49 L.Ed.2d 310 (1976), and *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821 (4th Cir. 1979), *with Erznoznik v. City of Jacksonville*, 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). As the court explained more fully in its earlier opinion, the question is open whether nude dancing which cannot be characterized as obscene is *per se* protected by the first amendment. *See California v. LaRue*, 409 U.S. 109, 128–131, 93 S.Ct. 390, 402–403, 34 L.Ed.2d 342 (Marshall, J., dissenting). Furthermore, the extent of the power of a municipality to regulate entertainment in bars and restaurants when the municipality has no liquor licensing authority is similarly unclear.

For all those reasons, the plaintiffs have met the requirement that they raise questions going to the merits so serious as to justify further deliberation. The only remaining inquiry under *Blackwelder* is how a grant or denial of a preliminary injunction in this case will affect the public interest. 550 F.2d at 196.

Granting the injunction will probably harm the Town of Bladensburg's public interest in eliminating certain activity it finds morally offensive. As the court indicated above, it is less likely that enjoining en-

forcement of Ordinance 3–80 will harm the public interest by promoting any serious "blight" between now and the time of a final adjudication on the merits. On the other hand, the interest of a broader public than the residents of Bladensburg will best be served by ensuring that no first amendment rights are infringed before the constitutionality of the ordinance has been thoroughly tested.

Because the "balance of hardships" test weighs decidedly in the plaintiffs' favor, because the plaintiffs have raised serious questions that merit further deliberation, and because the public interest will best be served by granting a preliminary injunction, the defendants will be enjoined from enforcing Ordinance 3–80 until the court has reached a final decision on the merits of the plaintiffs' claims. The court will issue a separate order to that effect.[2]

---

**2.** As the court indicated in the opinion of February 22d, nothing in this opinion or in the order should be deemed to affect any state proceedings stemming from enforcement of the ordinance prior to February 22d, or any state proceedings concerning the plaintiffs' liquor license.