Joseph INTURRI, et al.

v.

John F. HEALY, Individually and as Chairman of the Liquor Control Commission, State of Connecticut, et al.

Civ. No. H–76–4.

United States District Court, D. Connecticut.

Feb. 16, 1977.

---

Arthur L. Spada, Spada, Vinkels & Kristofak, Hartford, Conn., for plaintiffs.

Carl Ajello, Atty. Gen., State of Connecticut, Richard M. Sheridan, Barney Lapp, Daniel R. Schaefer, Asst. Attys. Gen., Hartford, Conn., for defendants.

Before TIMBERS, Circuit Judge, CLARIE, Chief Judge, and ZAMPANO, District Judge.

## MEMORANDUM OF DECISION

CLARIE, Chief Judge:

The plaintiff, Joseph Inturri, is the permittee of Helton, Incorporated, a cafe located in Hartford, Connecticut, which is licensed by the State Liquor Control Commission (LCC).[1] Included as plaintiffs are Helton, Incorporated, the corporate backer, and Charlene Jordan, a dancer, who alleges that the LCC regulations interfere with the conduct of her chosen profession, "topless and/or bottomless" dancing. The plaintiffs brought this § 1983 action against the members of the LCC, whose regulations prohibit

various types of sexually oriented entertainment, including topless dancing, in establishments licensed to sell alcoholic beverages for on-premises consumption. The plaintiffs claim that these LCC regulations violate their first and fourteenth amendment rights to free speech and equal protection.

On January 23, 1976, the plaintiffs' motion for a preliminary injunction was denied by the district court. Thereafter, a three-judge court was convened under 28 U.S.C. §§ 2281 and 2284 to consider the constitutional claims raised by the plaintiffs against the Commission's regulations, which have state-wide application. The Court finds that the issues of this case fall squarely within the ambit of *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), without raising any of the distinguishing factors present in the *Salem Inn* cases.[2] Accordingly, judgment shall enter for the defendants.

## FACTS

At the time when this action was filed and argued, section 30–6–A24 of the State Liquor Control Regulations read in part, as follows:

"No on-premises consumption place of business, such as a restaurant, tavern, hotel, cafe or club, shall permit entertainment consisting of impersonations either of females by males or of males by females, *nor shall any permittee of any such establishment advertise, give, permit or participate in any obscene, indecent, immoral or impure show or entertainment.*" (Emphasis added).

By an interpretative policy pronouncement issued on July 15, 1974 (Policy Memo # 21), the LCC construed this regulation as requiring that the attire of dancers on licensed premises should consist of "not less than a bikini type halter and a bikini type covering

1. *See* Conn.Gen.Stat. § 30–22a (cafe permits).

2. *Salem Inn, Inc. v. Frank (I),* 364 F.Supp. 478 (E.D.N.Y.1973), *aff'd,* 501 F.2d 18 (2d Cir. 1974), *aff'd sub nom. Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Salem Inn, Inc. v. Frank (II),* 381 F.Supp. 859 (E.D.N.Y.1974), *aff'd,* 522 F.2d 1045 (2d Cir. 1975); *Salem Inn, Inc. v. Frank (III),* 408 F.Supp. 852 (E.D.N.Y.1976).

for the lower portion of the torso. 'Pasties' and 'G–Strings' are not acceptable." The Memo further stated that "[t]he actions of the performers will not be such as to excite the prurient interest of the observer."

Violations of the aforesaid regulations led to three arrests for public indecency at the plaintiff Inturri's establishment during 1975,[3] followed by a letter from the LCC directing the plaintiff to cease "such activities."[4] A review of Inturri's cafe permit was initiated by the Commission, but action has been held in abeyance pending the resolution of this litigation. A formal request by the plaintiff to have topless dancing allowed on his premises was denied by the Commission in a letter dated November 19, 1975, with the observation that "[n]o exceptions [to the "topless" rule] have been made, nor will be made."

At the commencement of this action, the plaintiffs argued that the state's blanket prohibition on topless performances in licensed liquor establishments violated their first amendment right to freedom of expression, as applied to the states through the fourteenth amendment. They further alleged that the LCC's regulations have not been enforced against dinner-theater establishments, which stage legitimate theater productions, while patrons dine at individual tables nearby at which liquor is served. The plaintiffs claim that certain productions staged at these dinner-theaters have violated the LCC's regulations, yet no action has been taken against them. Such non-uniform application of the Commission's rules, the plaintiffs argued, violates their right to equal protection under the fourteenth amendment.

At the hearing on the merits, held March 29, 1976, the Attorney General of Connecticut advised the Court that new regulations were being prepared to replace those being contested by the plaintiffs, and that any decision issued by the Court prior to their final adoption might therefore be rendered moot. The Court withheld judgment pending the issuance of these revised regulations, which were published in final form on

---

**3.** The following excerpts, taken from police reports made in connection with the arrests at Helton, Inc., demonstrate that the performances presented at the cafe had no discernible artistic aspiration:

(1) (Feb. 25, 1975): "[T]he music . . . started up and five . . . girls came from [the kitchen] and started to perform their go-go dance. While they were performing the girls would at times be lying down on the table, spread their legs and wrap same around the necks of the patron sitting at this table. The patron would at times reach out and rub their hands in the private area of the dancer, sometimes on the outside of the bikini and on occasions put their hands down into the bikini placing money into the garment. Some of the dancers were observed during their gyrations bending over and some patrons were observed placing a kiss on the buttocks of the dancer. All of the dancers were touched by patrons in some way, shape or form, none of the dancers showed any form of objection to this and at no time did they stop their performance to register a complaint with the management. In the opinion of this Officer the girls seem to encourage this type action from the patrons."

(2) (Feb. 27, 1975): "[T]he accused was observed to walk onto the stage wearing a long black shirt which covered her body to her mid thigh. The accused then began to dance around the stage and while dancing unbuttoned her shirt and with both hands pulled her shirt away from her chest area completely exposing both of her breasts while dancing for a period of approximately 3 to 5 minutes. She then left the stage and entered the kitchen area where she was subsequently placed under arrest . . . ."

(3) (Nov. 13, 1975): "Both officers observed Accused # 2 on the stage . . . . She was dressed in a 'G' string and small halter. After a very short time on stage, the accused removed her 'G' string and halter. She was now on stage dancing with no clothing on what so ever [sic] . . . ."

"Accused # 1 then took over the dancing. She was also on stage a short time when a male customer walked to the stage, pulled open the accused halter [sic], and place [sic] a bill (money) inside of the halter. This male then kissed the accused on the lips and placed his hands on the ass of the accused. . . . Both accused were placed under arrest. . . ."

**4.** Exhibit D. By this the LCC says it meant all live performances. Inturri construed the letter as directing him to cease only prohibited performances—not an unreasonable interpretation, it would seem, in light of the letter's extremely ambiguous language. Believing that Inturri had defied its directive, the LCC initiated a special review of the plaintiff's license.

December 14, 1976.[5] Thereafter the plaintiffs renewed their challenge on the identical grounds raised in the initial complaint.

As amended, the new section 30–6–A24 of the Connecticut State Agency Regulations reads, in its relevant portions:

"(d) No person shall be employed or otherwise used in permit premises while such person is unclothed or in such attire, costume or clothing as to expose to view any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals. No person on the permit premises shall be permitted to touch, caress or fondle the breasts, buttocks, anus or genitals of any other person, nor shall any person or employee be permitted to wear or use any device or covering, exposed to view, which simulates the breast, genitals, anus, pubic hair or any portion thereof.

"(e) No 'live' entertainment shall be permitted except in accordance with prior written permission of the commission. . . . No entertainer, dancer, or other person shall perform acts or or acts which simulate: sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law; the touching, caressing or fondling of the breasts, buttocks, anus or genitals; the displaying of any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals. No permittee shall permit any person or entertainer to remain in or upon the permit premises who exposes to public view any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals. Entertainers must perform in one location and entertainers may not mingle with the patrons.

. . . . .

"(g) The showing of film, still pictures, electronic reproduction or other reproductions depicting the following shall be in violation of the regulations: acts or simulated acts of sexual intercourse, mastur-

bation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law; any persons being touched, caressed or fondled on the breast, buttocks, anus or genitals; scenes wherein a person displays any portion of the female breast below the top of the areola or any portion of the pubic hair, anus, cleft of the buttocks, vulva or genitals; scenes wherein artificial devices or inanimate objects are employed to depict, or drawing [sic] are employed to portray, any of the prohibited activities described in the above."

These highly detailed strictures in the amended regulations have narrowed the plaintiffs' freedom of expression claim, by eliminating much of the alleged vagueness inherent in the original regulations. The plaintiffs' claims remain otherwise unaffected, however, and so the Court must determine whether, under controlling case precedent, Connecticut's revised liquor control regulation prohibiting sexually oriented performances on licensed liquor premises is constitutionally enforceable against topless female dancers and entertainers.

## DISCUSSION OF THE LAW

In *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), the Supreme Court upheld California liquor control regulations very similar to those recently promulgated in Connecticut. Writing for the Court in *LaRue*, Justice Rehnquist noted that a state's authority to regulate liquor distribution under the twenty-first amendment is broader than its general police powers. *Hostetter v. Idlewild Bon Voyage Liquor Corp.*, 377 U.S. 324, 330, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964); *State Board v. Young's Market Co.*, 299 U.S. 59, 64, 57 S.Ct. 77, 81 L.Ed. 38 (1936); *but see Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). Noting that "[a] common element" in the contested regulations was "the Department's conclusion that the sale of liquor by the drink and lewd or naked dancing and entertainment should not take place" in bars and cocktail

---

5. *See* XXXVII Conn.L.J. No. 24 at 22 (Dec. 14, 1976).

lounges, *id.*, 409 U.S. at 115, 93 S.Ct. at 395, the Court declined to overturn California's regulations, even though much of the prohibited behavior would be constitutionally protected under the first amendment, if engaged in other than on licensed liquor premises.[6] For a liquor control regulation to be valid, the *LaRue* Court intimated, all that is required is that a relation exist between the contested enactment and some valid regulatory purpose which is not wholly irrational.[7]

Despite the broad primary holding in *La-Rue*, however, the Court did not completely foreclose constitutional attacks upon state liquor regulations limiting lewd entertainment. In one paragraph the Court stated:

"[W]e conceive the State's authority [in regulating bar room performances] to be somewhat broader than did the District Court. *This is not to say that all such conduct and performance are without the protection of the First and Fourteenth Amendments.* But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries that the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater." 409 U.S. at 118, 93 S.Ct. at 397 (emphasis added).

Similarly, in discussing whether California's regulations were constitutionally enforceable in all circumstances, regardless of first amendment considerations, the Court said:

"Because of the posture of this case, we have necessarily dealt with the regulations on their face, and have found them to be valid. The admonition contained in the Court's opinion in *Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 52, 86 S.Ct. 1254, 1264, 16 L.Ed.2d 336 (1966), is equally in point here: 'Although it is possible that specific future applications of [the statute] may engender concrete problems of constitutional dimension, it will be time enough to consider any such problems when they arise.'" *Id.* at 119 n. 5, 93 S.Ct. 397 n. 5.

Subsequent to *LaRue*, a series of related actions—the *Salem Inn* cases[8]—were decided in this Circuit. The controversy in these cases centered on efforts of the North Hempstead, Long Island town fathers to ban topless dancing and related activities in any "cabaret, bar and/or lounge, dance hall, or discotheque, or any other public place within the Town of North Hempstead. . . ." Initially, Judge Bartels of the United States District Court for the Eastern District of New York issued a preliminary injunction restraining enforcement of the town's ordinance on first amendment grounds. *Salem Inn, Inc. v. Frank*, 364 F.Supp. 478 (E.D.N.Y.1973), *aff'd*, 501 F.2d 18 (2d Cir. 1974). In the course of its decision, the court made reference to *LaRue*:

"Obviously *LaRue*, which is predicated upon the powers of the State Liquor Au-

---

**6.** The Court stated that

"[we] do not disagree with the District Court's determination that these regulations on their face would proscribe some forms of visual presentation that would not be found obscene under *Roth* [*Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)] and subsequent decisions of this Court. . . . But we do not believe that *the state regulatory authority in this case* was limited to either dealing with the problem it confronted within the limits of our decisions as to obscenity, or in accordance with the limits prescribed for dealing with some forms of communicative conduct in *O'Brien* [*United States v. O'Brien*, 391 U.S.

367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)] . . . ." 409 U.S. at 116, 93 S.Ct. at 396.

**7.** "Based on the evidence from the hearings that [the Calif. Alcoholic Beverage Control Department] cited to the District Court, and mindful of the principle that in legislative rulemaking the agency may reason from the particular to the general, *Assigned Car Cases*, 274 U.S. 564, 583 [47 S.Ct. 727, 71 L.Ed. 1204] (1927), we do not think it can be said that the Department's conclusion [seeking to separate nude or semi-nude exhibitions and liquor distribution] was an irrational one." 409 U.S. at 115–16, 93 S.Ct. at 395.

**8.** *See* note 2 *supra*.

thority, has no relevance to the constitutionality of the present ordinance, which has no other justification than the exercise of the police powers of the community. While it is true that the police power of the state may be invoked for the protection of society, it cannot be exercised in a manner inconsistent with the peaceful expression of the plaintiffs' constitutionally protected First Amendment rights." 364 F.Supp. at 482.

On appeal to the Supreme Court, Judge Bartels' issuance of a preliminary injunction was upheld. Again writing for the majority, Justice Rehnquist stated:

"Although the customary 'bar room' type of nude dancing may involve only the barest minimum of protected expression, we recognized in *California v. La-Rue*, 409 U.S. 109, 118 [93 S.Ct. 390, 397, 34 L.Ed.2d 342] (1972), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances. In *LaRue*, however, we concluded that the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a state could therefore ban such dancing as a part of its liquor license program.

"In the present case, the challenged ordinance applies not merely to places which serve liquor, but to many other establishments as well." 422 U.S. at 932–33, 95 S.Ct. at 2568.

Subsequent to the Court's decision, a minor change was made in the North Hempstead ordinance.[9] The district court found the revised ordinance, like its predecessor, to be constitutionally defective, and so issued a permanent injunction. *Salem Inn, Inc. v. Frank*, 381 F.Supp. 859 (E.D.N.Y. 1974), *aff'd*, 522 F.2d 1045 (2d Cir. 1975). In affirming the district court, the Second ·Circuit, per Judge Oakes, observed that

"[T]o the extent that the ordinance in its preamble or the Town in its brief relies upon the suggestion in *Doran v. Salem Inn, Inc., supra*, that the Twenty-first Amendment may validate the ordinance, . . . we agree with Judge Bartels that the ordinance was not adequately limited in its impact. The Twenty-first Amendment does not justify regulatory control over places that serve only food or which provide entertainment but not alcoholic beverages." 522 F.2d at 1049–50 (footnote omitted).

This ruling concluded the principal phase of the *Salem Inn* controversy. Another phase has ensued, however, which is relevant to the present discussion. In October of 1975, the New York State Liquor Authority moved to revoke Salem Inn's liquor license. Concurrently, the Authority promulgated a rule defining "lewd and indecent performance" on licensed liquor premises. The rule, while less stringent than Connecticut's or California's, employs a similar approach and uses similar operational language. The Salem Inn brought suit to have the New York rule declared unconstitutional. While agreeing to convene a three-judge court, Judge Bartels refused to issue a preliminary injunction. *Salem Inn, Inc. v. Frank*, 408 F.Supp. 852 (E.D.N.Y. 1976). In the course of his opinion, he noted that

"this case is entirely different from *Doran v. Salem Inn, Inc.* [422 U.S. 922], 95 S.Ct. 2561 [45 L.Ed.2d 648] (1975), and *Salem Inn, Inc. v. Frank*, 501 F.2d 18 (2d Cir. 1974), where local ordinances attempted to prohibit topless dancing across the board in violation of the plaintiff's First Amendment rights. Here a new element has been introduced predicated upon the authority of the State under the Twenty-First Amendment . . . . .

"In [*LaRue*], the Supreme Court held that in the context of the regulation of the sale and distribution of alcoholic bev-

**9.** The sole change was removal of the phrase "or any other public place within the Town of North Hempstead," from the list of places where the ordinance would apply, along with the addition of restaurants and coffee shops.

erages the States's broad power under the Twenty-First Amendment is broad enough to prohibit, on licensed premises, topless or bottomless dancing which otherwise might be protected by the First Amendment." *Salem Inn, Inc. v. Frank, supra,* at 855.

The court then proceeded to consider certain distinguishing factors not relevant here.[10]

■ It seems clear that the *Salem Inn* cases, upon which the plaintiffs place great weight, are not directly in point, except for the most recent opinion of Judge Bartels, and that ruling favors the defendant Liquor Commissioners in this action. Accordingly, with respect to the plaintiffs' first amendment claim the Court finds that the rule of *California v. LaRue, supra,* is directly controlling, and that Connecticut's regulations must therefore be deemed constitutional on their face.

The plaintiffs also raise an equal protection challenge to the Connecticut LCC's "topless dancing rule," and to the manner in which it is enforced. Specifically, they allege that the LCC has not taken action against prohibited performances in dinner-theater establishments, while closely scrutinizing the entertainment offered in lounges or cafes.[11]

It should be noted at the outset that the equal protection claim upheld by the Second

Circuit in *Salem Inn, Inc. v. Frank,* 522 F.2d 1045, 1049 (2d Cir. 1975), is not in point here. The original *Salem Inn* cases involved a town ordinance rather than a liquor authority regulation, and their disposition required no balancing of the fourteenth and twenty-first amendments. Thus, in deciding that the fourteenth amendment prohibited the application of North Hempstead's ordinance to some commercial enterprises but not others, absent the showing of a compelling state interest in the classification, the court had no occasion to address the narrower question of whether or not a state liquor control authority, acting pursuant to a regulation valid under *LaRue,* is empowered to draw reasonable distinctions between licensed establishments for purposes of applying its rules.

■ Turning to this latter question, the Court is mindful that "the Twenty-first Amendment [does not] empower a state to act with total irrationality or invidious discrimination in controlling the distribution of liquor within its borders." *California v. LaRue, supra,* 409 U.S. at 120, 93 S.Ct. at 398 (Stewart, J., concurring); *see also Craig v. Boren,* 429 U.S. 191, 204–210, 97 S.Ct. 451, 50 L.Ed.2d 397; *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). However, the discrimination here is far from invidious. Under a "rational relation" test,[12] a state liquor con-

---

**10.** It was argued that *LaRue* should not apply to the New York regulations, since (a) proper hearings were not held before their adoption, and (b) criminal penalties were assessed for non-compliance. Neither of these factors is relevant here.

**11.** It must be emphasized that no evidence whatsoever was presented by the plaintiffs to substantiate this allegation. Nevertheless, inasmuch as the Court finds the proffered equal protection claim to lack merit, the truth of the allegations may be assumed for purposes of discussion.

**12.** The appropriate "standard of scrutiny" to be applied in an equal protection analysis involving twenty-first amendment considerations remains unsettled, although the matter was addressed in the recent case of *Craig v. Boren,* 429 U.S. 191, 204–210, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *see also id.* at 210–215, 97 S.Ct. 451 (concurring opinions). Therein,

the Court, stated that "[o]nce passing beyond consideration of the Commerce Clause, the relevance of the Twenty-first Amendment to other constitutional provisions becomes increasingly doubtful." *Id.* at 206, 97 S.Ct. at 461. It further stated:

"It is true that *California v. LaRue,* 409 U.S. 109, 115, 93 S.Ct. 390, 395, 34 L.Ed.2d 342 (1972), relied upon the Twenty-first Amendment to 'strengthen' the State's authority to regulate live entertainment at establishments licensed to dispense liquor, at least when the performances 'partake more of gross sexuality than of communication,' *id.* at 118 [93 S.Ct., at 397]. Nevertheless, the Court has never recognized sufficient 'strength' in the Amendment to defeat an otherwise established claim of invidious discrimination in violation of the Equal Protection Clause. Rather, *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 178–179 [92 S.Ct. 1965, 1974, 32 L.Ed.2d 627] (1972), establishes that

trol authority might construe, for enforcement purposes,[13] that non-conforming per-formances in a dinner-theater would be unlikely to present the same provocations as are posed by the "bacchanalian revelries" typically associated with bar room nudity.[14] The Court is not called upon here to make a determination of whether or not under *La-Rue*[15] Connecticut's regulations may be applied generally to dinner-theater presentations, given the artistic merits of particular productions and the existence of a theater type environment. It is sufficient for the purposes of this case to state that the Court finds no basis to upset the contested Connecticut liquor control regulations on equal protection grounds.

After having considered all of the plaintiffs' constitutional claims, the Court concludes that Connecticut's liquor control regulations governing sexually oriented performances in licensed liquor establishments, while restrictive, do not infringe upon any of the plaintiffs' constitutional rights. Judgment is accordingly entered for the defendants. SO ORDERED.

state liquor regulatory schemes may not work invidious discriminations that violate the Equal Protection Clause." 429 U.S. at 207, 97 S.Ct. at 462.

*Craig* involved a gender-based discrimination in the minimum drinking age for 3.2% beer in Oklahoma. The Court held, despite the twenty-first amendment's application to the case, that the Oklahoma law restricting the access of young males (but not young females) aged 18–21 to 3.2% beer was not "substantially related" to the state's proffered interest in traffic safety.

The presently contested liquor control regulations are distinguishable from the drinking age statute in *Craig*. To begin with, a more persuasive link may be drawn between nude performances in licensed liquor establishments and public disorder than Oklahoma officials were able to establish between the consumption of 3.2% beer by young males aged 18–21 and traffic safety. *Compare California v. La-Rue, supra*, 409 U.S. at 111, 93 S.Ct. 390, *with Craig v. Boren, supra*, 429 U.S. at 204, 207, 210–215, 97 S.Ct. 451. Nor, under the Supreme Court's rulings, would it appear that a "strict scrutiny" category exists. *See, esp.,*

*Doran v. Salem Inn, Inc.*, 422 U.S. at 932, 95 S.Ct. 2561; *but see, Salem Inn, Inc.* ̀v. *Frank,,* 522 F.2d 1045, 1049 (2d Cir. 1975).

13. Enforcement typically enters into equal protection analyses when an otherwise permissible statute or ordinance is applied in a discriminatory fashion. Here, the regulation itself may be overbroad, given that it could be found unconstitutional in some particular applications. *See LaRue, supra,* 409 U.S. 119 n. 5, 93 S.Ct. 390 (set-out in text above). Yet under *LaRue* the regulation is constitutional on its face. This being so, the question becomes whether a state's enforcement of the regulation violates ̀the equal protection clause when a reasonable effort is made to discriminate between appropriate and inappropriate applications prior to initiating enforcement efforts.

14. *See, e. g., LaRue,* 409 U.S. at 111, 93 S.Ct. 390; note 3 *supra.*

15. *See LaRue,* 409 U.S. at 119 n. 5, 93 S.Ct. 390; *Craig v. Boren, supra,* 429 U.S. at 207, 97 S.Ct. 451; note 13 *supra.*