**TOP SHELF, INC., d/b/a/ Classy Kats, Plaintiff,**

v.

**The MAYOR AND ALDERMEN FOR the CITY OF SAVANNAH, and the City of Savannah, a municipal corporation, Defendants.**

**No. CV 493–261.**

United States District Court,
S.D. Georgia,
Savannah Division.

Dec. 27, 1993.

Roy L. Allen, Jr. and Diane Marie Morrell, Savannah, GA, for plaintiff.

James B. Blackburn and Abda L. Qullian, Savannah, GA, for defendants.

## ORDER AND MEMORANDUM

NANGLE, District Judge.

The above-captioned action is plaintiff's second attempt at relief in this Court. As a result of a pending state criminal proceeding, the first action was dismissed pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Top Shelf, Inc. v. Mayor and Aldermen for the City of Savannah,* 832 F.Supp. 361 (S.D.Ga.1993) (*"Top Shelf I"*). Following this ruling, plaintiff dismissed the appeal of its criminal conviction and filed the instant action.

At bench trial on November 15, 1993, the parties asked the Court to consolidate the preliminary and permanent injunction stages pursuant to Fed.R.Civ.P. 65(a)(2), and to issue a ruling on the merits based upon the briefs submitted in the instant matter and the stipulations and exhibits filed in the previous action. Accordingly, the Court renders the following finding of facts and conclusions of law as required by Fed.R.Civ.P. 52(a).

### FINDINGS OF FACTS

Plaintiff Top Shelf, Inc. ("Top Shelf") is a Georgia corporation doing business as Classy Kats in Savannah, Chatham County, Georgia. Classy Kats is licensed by the defendant City of Savannah ("the City") to serve alcoholic beverages. It offers nude dancing.

On July 22, 1993, the Mayor and Aldermen for the City adopted and codified an ordinance as 6–1222(h) in the City's code. It reads in pertinent part as follows:

No license holder or agent of any license holder shall allow any person, regardless of such person's business or personal relationship (or lack thereof) to the license holder, to initiate or continue, in or around the establishment:

(i) the employment or use of any person in any capacity in the sale or service of alcoholic beverages while such person is unclothed or in such attire, costume or clothing, as to expose to view any portion of the female breast below the top of the areola or of any portion of the male or female pubic hair, anus, cleft of the buttocks, vulva or genitals;

(ii) live entertainment where any person appears in the manner described in preceding sub-paragraph of this subsection or where any person engages in or simulates any of the following acts:

(a) Sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual act which is prohibited by law;

(b) The caressing or fondling of the breasts, buttocks, anus or genitals;

(c) The displaying of the male or female pubic hair, anus, vulva or genitals;

(iii) the holding, promotion, sponsoring or allowance of any contest, promotion, special night, event or any other activity where patrons of the license-holding establishment are encouraged or allowed to engage in any of the conduct, or to be attired as described in the preceding sub-paragraph of this subsection.

This subsection shall not apply nor prohibit the live performance of legitimate plays, operas, or ballets at mainstream theaters, concert halls, museums or educational institutions holding a license, which derive less than twenty percent (20%) of its [sic] gross receipts from the sale of alcoholic beverages.[1]

*Severability.* If any section, sentence, clause or phrase of this Ordinance is for any reason held to be invalid or unconstitutional by a decision of any court of competent jurisdiction, it is the intent of the Mayor and Aldermen that the court assume that the Mayor and Aldermen would have enacted these provisions without such invalid or unconstitutional provisions and that such decision should not affect the validity of the remaining portions of this Ordinance.

Amendment to Pl.'s Pet. for Prelim.Inj. (hereinafter referred to as "6–1222(h)" or "the ordinance").

In enacting 6–1222(h), the City considered studies and findings of other municipalities and urban counties, including College Park,

---

1. This subsection will be referred to as the "mainstream exception." For ease of reference, the remainder of the ordinance will be described as the "non-mainstream portion."

Georgia; Richmond County, Georgia; Atlanta, Georgia; Manatee County, Florida; Indianapolis, Indiana; Austin, Texas; Phoenix, Arizona; and Los Angeles, California. In addition to considering other areas' findings as to nude dancing, the Mayor and Aldermen considered the studies and recommendations of the city's Metropolitan Planning Commission relating to the zoning and land use effects of adult entertainment establishments, evidence presented to the Mayor and Aldermen in public hearings, and the experience of the Savannah Police Department. These studies indicated that the following adverse effects flowed from nude dancing: prostitution, violent and sex-related offenses, drug trafficking and use, illegal dispensing of alcoholic beverages, disorderly conduct, depression of property values in the surrounding neighborhood, increased expenditure for and allocation of law enforcement personnel, increased burden on the judicial system due to increased criminal behavior, and acceleration of community blight. While discussions at the July 8, 1993, meeting of the Savannah City Council indicate that the ordinance corresponded with the state's definition of lewd conduct, the ordinance itself does not purport to regulate obscenity or lewdness. Instead, the City enacted it to further "public health, safety and welfare."

On July 28, 1993, Steve Richardson, the manager and holder of the alcoholic beverage license for Classy Kats, was cited by officers of the Savannah Police Department for violating 6–1222(h). After a hearing on the citation in the Recorder's Court of Savannah and Chatham County, Richardson was found guilty and fined $500.00; Richardson then appealed this determination to the Superior Court of Chatham County. Before the appeal was adjudicated, Top Shelf filed *Top Shelf I*, which was dismissed under the ab-

stention doctrine announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Richardson dropped his Superior Court appeal, and Top Shelf filed the instant action.

Since Richardson's citation on July 28, 1993, Classy Kats has not offered nude entertainment and has attempted to comply with 6–1222(h). Its business has suffered from substantial decreases in customers and profits.

## CONCLUSIONS OF LAW

Top Shelf mounts three challenges to 6–1222(h): It asserts that the ordinance violates the Equal Protection Clause by having separate standards for mainstream and non-mainstream licensees, violates the First Amendment and the Due Process Clause by failing to adequately define mainstream establishments, and violates the Due Process Clause by setting forth an arbitrary and capricious standard in the mainstream exception.

Top Shelf challenges 6–1222(h) solely under the Constitution of the United States. The City's ordinance is virtually identical to one upheld under the Georgia Constitution by the Georgia Supreme Court in *S.J.T., Inc. v. Richmond County*, 263 Ga. 267, 430 S.E.2d 726 (Ga.), *cert. denied*, —— U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 567 (1993); *cf. Harris v. Entertainment Sys., Inc.*, 259 Ga. 701, 386 S.E.2d 140 (1989) (mandating inclusion of mainstream exception to comply with free expression guarantees under Georgia Constitution). A challenge under the United States Constitution entails a different analysis, namely consideration of the Twenty-first Amendment.[2] *See Harris*, 386 S.E.2d at 142 (noting "[b]ecause Georgia has no constitu-

---

2. As a threshold matter, the Georgia Supreme Court apparently extends the broad regulatory power under the Twenty-first Amendment to local governing bodies. *See Illusions on Peachtree Street, Inc. v. Young*, 257 Ga. 142, 356 S.E.2d 510, 512 (1987) (in challenge to a municipal ordinance, noting "[l]ocal governing bodies have broad power under the Twenty–First Amendment to regulate the time, place and manner of the sale of liquor"); *Jackson v. Three Aces Co.*, 249 Ga. 395, 291 S.E.2d 522 (1982) (recognizing that states and municipalities therein are vested with

broad power under the Twenty-first Amendment). Accordingly, analysis under the Twenty-first Amendment is appropriate. *See Geneas v. Willets*, 911 F.2d 579 (11th Cir.1990), *cert. denied sub nom. Function Junction, Inc. v. Crowe*, 499 U.S. 955, 111 S.Ct. 1431, 113 L.Ed.2d 484 (1991). If the state had not delegated its Twenty-first Amendment power, the ordinance would be subject to the stricter review applicable to exercises of the general police power. *Jorgenson v. County of Volusia*, 846 F.2d 1350 (11th Cir. 1988).

tional equivalent to the Twenty–First Amendment, the State's police power, though possibly not limited under the U.S. Constitution, is limited by Georgia's constitution.").

■ The Twenty-first Amendment to the United States Constitution provides that "[t]he transportation or importation into any State ... for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, § 2. The state's broad power under the Twenty-first Amendment to ban entirely the sale of alcoholic beverages includes the lesser power to ban the sale of liquor on premises where topless dancing occurs despite possible First Amendment implications. *New York State Liquor Auth. v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) (per curiam); *see also City of Newport v. Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986) (per curiam); *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). Under this authority, ordinances similar to the "non-mainstream" portions of 6–1222(h) regularly have been upheld. *See, e.g., LaRue*, 409 U.S. at 111–112, 93 S.Ct. at 393–394 (considering regulation similar to 6–1222(h)(ii)); *Iacobucci*, 479 U.S. at 93, n. 1, 107 S.Ct. at 2600, n. 1; *Bellanca*, 452 U.S. at 714, n. 1, 101 S.Ct. at 2600, n. 1; *Geneas*, 911 F.2d at 580–581, n. 1; *Lanier v. City of Newton*, 842 F.2d 253, 255, n. 1; *Fillingim v. Boone*, 835 F.2d 1389, 1391, n. 1 (11th Cir.1988).

### 1. The equal protection claim .

■ While the City clearly may ban the conduct described in the "non-mainstream" portions of 6–1222(h), the Court must determine whether the City may distinguish between mainstream and non-mainstream performances on the ordinance's face. To determine the constitutionality of this differentiation under the Equal Protection Clause of the Fourteenth Amendment, Top Shelf advocates application of the strict scrutiny standard given the ordinance's implication of First Amendment rights. The Court concludes, however, that rational relationship scrutiny is appropriate in light of the applicability of the Twenty-first Amendment in this matter.

The Twenty-first Amendment "outweigh[s] any First Amendment interest in nude dancing"[3] and allows the governing body to completely ban nude dancing. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975). The Twenty-first Amendment confers "something more than the normal state authority over public health, welfare and morals." *LaRue*, 409 U.S. at 114, 93 S.Ct. at 395. Regulations and ordinances enacted pursuant to the Twenty-first Amendment enjoy an "added presumption in favor of [their] validity." *Id.* at 118, 93 S.Ct. at 397; *see also Iacobucci*, 479 U.S. at 97, 107 S.Ct. at 386. Despite the broad reach of the Twenty-first Amendment, it does not supersede or "trump" other constitutional enactments, *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (analyzing gender-based discrimination in sale of 3.2% beer), or permit a governing body to act with " 'total irrationality or invidious discrimination.' " *Iacobucci*, 479 U.S. at 95, n. 5, 107 S.Ct. at 385 n. 5, *citing LaRue*, 409 U.S. at 120, 93 S.Ct. at 398 (Stewart, J., concurring). In analyzing *LaRue*, the *Craig* court stated that "the Court has never recognized sufficient 'strength' in the Amendment to defeat an otherwise established claim of invidious discrimination in violation of the Equal Protection Clause," the Bill of Rights, or the Due Process Clause, and declined to alter its application of Equal Protection standards in light of the Twenty-first Amend-

---

**3.** The exact amount of First Amendment protection afforded to nude or topless dancing has not been clearly fixed by the Supreme Court. It is not without First Amendment protection, *LaRue*, 409 U.S. at 118, 93 S.Ct. at 397, but may invoke "only the barest minimum of protected expression." *Doran*, 422 U.S. at 932, 95 S.Ct. at 2568. The most recent Supreme Court pronouncement on the subject notes both that "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though ... only marginally so," *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, ——, 111 S.Ct. 2456, 2461, 115 L.Ed.2d 504 (1991) (plurality) (applying First Amendment analysis to public indecency statute). The *Barnes* dissent (subscribed to by four justices) only indicates that "nude dancing performed as entertainment enjoys First Amendment protection." *Id.* 501 U.S. at ——, 111 S.Ct. at 2472.

ment. *Id.* 429 U.S. at 207, 209, 97 S.Ct. at 462, 463.

Despite *Craig*'s statement that the Twenty-first Amendment does not affect the analysis of individual rights, the majority opinions in *Bellanca* and *Iacobucci*—the two post-*Craig* Supreme Court cases addressing the Twenty-first Amendment's effect on nude dancing, an activity protected in some manner under the First Amendment—fail to cite, mention or address *Craig*.[4] Given the apparent reluctance to apply *Craig* to cases involving nude dancing, *LaRue* and its progeny provide the appropriate analysis for determining the proper level of scrutiny of Top Shelf's claims under the Equal Protection Clause. Under *LaRue*, the Twenty-first Amendment outweighs any First Amendment interest in nude dancing, confers an added presumption of validity on the ordinance, and empowers the governing body with more than normal power over public health and welfare.

Top Shelf urges application of the strict scrutiny standard,[5] relying primarily on *Salem Inn, Inc. v. Frank*, 522 F.2d 1045 (2d Cir.1975). In *Frank*, the Town of North Hempstead prohibited nudity only in "any cabaret, bar or lounge, dance hall, discotheque, restaurant or coffee shop" within its borders. *Frank*, 522 F.2d at 1046, n. 1. In enacting its ordinance, the Town was not concerned with obscenity, lewdness, or "displays of the anatomy in an opera house, theater, playhouse or concert hall, ballet or movie"; instead, the Town intended to regulate the commercial exploitation of nudity. *Id.* at 1046–1047, n. 3. The *Frank* court applied strict scrutiny analysis to the plaintiffs' Equal Protection claim due to "the modicum of expression involved in topless dancing." *Id.* at 1049; *cf. American Booksellers v. Webb*, 919 F.2d 1493, 1510, n. 36 (11th

Cir.1990) (distinguishing *Frank* and applying rational relationship test to equal protection challenge to exemption of libraries from obscene material statute), *cert. denied*, —— U.S. ——, 111 S.Ct. 2237, 114 L.Ed.2d 479 (1991). It found that the Town's scheme was constitutionally impermissible since the Town failed to show a compelling justification for distinguishing between topless dancing in a bar and topless dancing in a legitimate theater. *Frank*, 522 F.2d at 1049. The *Frank* court specifically noted that the ordinance was not justified as an exercise of Twenty-first Amendment power since conduct properly subject to regulation as part of liquor licensing was not involved and since the ordinance applied to places not serving alcoholic beverages. *Frank*, 522 F.2d at 1047.

Conversely, in *Inturri v. Healy*, 426 F.Supp. 543 (D.Conn.1977), plaintiffs alleged that regulations prohibiting nude dancing were enforced only against entertainment offered in lounges, and not against prohibited performances in dinner theaters. The court differentiated *Frank* as not involving a balancing of the Fourteenth and Twenty-first Amendments, and noted that the *Frank* court had no occasion to address whether a liquor control authority could draw reasonable distinctions between licensed establishments in applying its rules. *Inturri*, 426 F.Supp. at 549. While realizing that the Twenty-first Amendment would not permit invidious discrimination, the court found that the discrimination was "far from invidious" and upheld the ordinance under the rational relationship test. *Id.* In so doing, the Court recognized that "non-conforming performances in a dinner-theater would be unlikely to present the same provocations as are posed by the 'bacchanalian revelries' typically associated with barroom nudity." *Id.* at 550, *citing LaRue*, 409 U.S. at 118, 93 S.Ct. at

---

4. Justice Stevens' dissent in *Iacobucci* identifies a "complete[ ] distort[ion]" of the Twenty-first Amendment in that "[i]t now has a barely discernible effect in Commerce Clause cases, ... but under *Bellanca* and [*Iacobucci*], it may be dispositive in First Amendment cases." *Iacobucci*, 479 U.S. at 98, 107 S.Ct. at 387 (Stevens, J., dissenting).

5. This standard applies when an ordinance impinges on personal rights protected by the Con-

stitution. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). As a result, the differentiation must be shown to be "necessary to promote a *compelling* governmental interest," *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (emphasis in original), and narrowly tailored to serve that interest. *Cleburne*, 473 U.S. at 440, 105 S.Ct. at 3254.

397. Although neither *Frank* nor *Inturri* is on point with the instant matter,[6] *Inturri* is ultimately more helpful since the challenged regulation implicated the Twenty-first Amendment.

Accordingly, the Court believes that rational relationship scrutiny is appropriate to determine whether the City may differentiate between non-mainstream and mainstream establishments pursuant to its Twenty-first Amendment powers. *Cf. LaRue*, 409 U.S. at 118, 93 S.Ct. at 397 (examining whether state's conclusion supporting regulation was "irrational"). Under this standard, an enactment should be upheld if the disparity of treatment is rationally related to some legitimate governmental purpose. *Heller v. Doe*, ⸺ U.S. ⸺, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993); *see also City of Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). The governing body creating the challenged categories need not articulate the rationale supporting its classification; instead, a classification may be upheld if "any reasonably conceivable state of facts" could rationally support it. *Heller*, ⸺ U.S. at ⸺, 113 S.Ct. at 2642. The governing body has no obligation to produce evidence to sustain the classification's rationality, but the party attacking the enactment bears the burden to negate every conceivable basis supporting it. *Id.* at ⸺, 113 S.Ct. at 2643. To sustain the regulation, the court "must find some footing in the realities of the subject addressed by the legislation." *Id.* at ⸺, 113 S.Ct. at 2643. In the case at bar, the Court concludes that this deferential review is consistent with the "added presumption of validity" given to ordinances enacted pursuant to the Twenty-first Amendment, *LaRue*, 409 U.S. at 118, 93 S.Ct. at 397, and the lack of need for specific findings supporting ordinances enacted pursuant to the Twenty-first Amendment. *See Lanier*, 842 F.2d at 255 (noting " 'extensive and detailed legislative findings based upon substantial evidence that the prohibited activity contributed to criminal activity in the [city] are not required' "), *citing Fillingim*, 835 F.2d at 1397; *cf. Bellanca*, 452 U.S. at 717, 101 S.Ct. at 2601.

The ordinance at issue is rationally related to the legitimate governmental purposes of public health, safety and welfare. *Cf. Barnes*, 501 U.S. at ⸺, 111 S.Ct. at 2461 (plurality) (recognizing "protection of order and morality" as a substantial government interest in First Amendment context). In enacting 6–1222(h), the City relied on studies from other similarly situated areas,[7] studies from its Metropolitan Planning Commission, and testimony from public hearings. It discovered numerous deleterious effects flowing from the combination of "barroom" dancing and alcohol. *See LaRue*, 409 U.S. at 111, 93 S.Ct. at 393 (detailing deleterious effects discovered by governing body). Although the City has presented no findings on circumstances surrounding the combination of alcohol and mainstream performances, it is reasonable to assume that there are few, if any, criminal episodes associated with patrons of the opera, deleterious effects on property values arising from a location near a community theater presenting "Hair," or episodes of prostitution or drug-trafficking intrinsically linked to an exhibition of nude sculptures appearing at a local museum. *See Inturri*, 426 F.Supp. at 550. The adverse effects associated with nude dancing and considered by the City in enacting 6–1222(h) most likely do not occur or do not occur with the same regularity at "mainstream" performance houses. In any event, the differentiation does not amount to invidious discrimination.[8]

---

**6.** *Frank* is inapposite since it did involve the Twenty-first Amendment. *Inturri* differs from the instant case by involving a difference in enforcement, not a difference in the regulation. *See generally Geneas*, 911 F.2d at 587–588 (noting that a selective enforcement claim under the Equal Protection Clause provides no basis for the court to invalidate a city ordinance).

**7.** The City properly relied upon the experiences of other cities in enacting its ordinance, and was not required to conduct new studies or produce independent evidence as long as the evidence relied upon by the City is reasonably believed to be relevant to its problem. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (analyzing zoning ordinance).

**8.** In fact, the ordinance recognizes a distinction drawn by the Supreme Court in *LaRue* and in Justice Stevens' dissent in *Iacobucci*. Three of the four opinions in *LaRue* distinguished between nude dancing and performances incidentally in-

In sum, 6–1222(h)'s distinction between mainstream and non-mainstream performances is not constitutionally impermissible. The Twenty-first Amendment outweighs any First Amendment interest in nude dancing, and requires this Court to presume that 6–1222(h) is valid. In light of this presumption and the lack of invidious discrimination, rational relationship scrutiny under the Equal Protection Clause is appropriate. The City's differentiation between mainstream and non-mainstream performances is rationally related to the City's interest in health, safety and welfare, which are legitimate governmental interests. Accordingly, the ordinance passes muster under the Equal Protection Clause.

### 2. The vagueness claim

■ Top Shelf next claims that the mainstream exception in 6–1222(h) is unconstitutionally vague under the First and Fourteenth Amendments [9] since the ordinance provides no definition or standards to guide officials in determining which establishments are "mainstream" and which are not. Top Shelf contends that this lack of guidance will result in arbitrary and discriminatory enforcement of the ordinance by government officials with unbridled discretion. Top Shelf lacks standing to make this challenge.

Although standing rules under the First Amendment may be relaxed in certain situations, a party may not challenge the vagueness of an ordinance as it might hypothetically be applied to others if the party's actions fall squarely within the ordinance's prohibitions. *Wilson v. Taylor,* 658 F.2d 1021 (5th Cir. Unit B Oct. 1981); *see also Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 58–59, 96 S.Ct. 2440, 2446–47, 49 L.Ed.2d 310 (1976) (finding adult theater owners lacked standing to challenge ordinance's provisions relating to nature of films and to waiver of restrictions where owners planned to offer admittedly adult fare and never alleged claiming a waiver of the restriction); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *South Florida Free Beaches, Inc. v. City of Miami,* 734 F.2d 608 (11th Cir.1984). Even if 6–1222(h)'s application to owners of mainstream establishments may be uncertain, the ordinance's provisions are unquestionably applicable to Top Shelf. *See Young,* 427 U.S. at 59, 96 S.Ct. at 2446–47. The ordinance excepts only "the live performance of legitimate plays, operas, or ballets at mainstream theaters, concert halls, museums or educational institutions holding a license." Top Shelf contends neither that it ever plans to stage a performance of a legitimate play, opera or ballet, nor that Classy Kats is a mainstream theater, concert hall, museum or educational institution. Any element of vagueness in the mainstream exception will not affect Top Shelf. Since 6–1222(h)'s non-mainstream portions undoubtedly may be applied against Top Shelf, Top Shelf will not be subject to any possible discriminatory enforcement resulting from

---

volving nudity. The majority noted that the regulations were not challenged in the "context of censoring a dramatic performance at a theater," but in licensing bars and nightclubs selling liquor. *LaRue,* 409 U.S. at 114, 93 S.Ct. at 395. It declined to recognize as constitutional equivalents "bacchanalian revelries" at which the regulations were aimed and "a performance by a scantily clad ballet troupe in a theater." *Id.* at 118, 93 S.Ct. at 397. Justice Douglas' dissent could not "imagine that [a performance of Shakespeare] could constitutionally be punished or restrained ... [c]ertainly a play which passes muster under the First Amendment is not made illegal because it is performed in a beer garden." *Id.* at 121, 93 S.Ct. at 398–99 (Douglas, J., dissenting). Justice Marshall's dissent focused on the fact that the regulations included works undoubtedly protected by the First Amendment: "The regulations thus treat on the same level a serious movie such as 'Ulysses' and a crudely made 'stag film.' They ban not only obviously

pornographic photographs, but also great sculpture from antiquity." *Id.* at 127, 94 S.Ct. at 402 (Marshall, J., dissenting).

Justice Stevens' dissent in *Iacobucci* also addressed the overly broad application of the challenged ordinance, noting that "a theater cannot sell champagne during intermission without a liquor license. It is surely strange to suggest that a dramatic production like 'Hair' would lose its First Amendment protection because alcoholic beverages might be served in the lobby during intermission." *Iacobucci,* 479 U.S. at 101–102, 107 S.Ct. at 388–389 (Stevens, J., dissenting).

9. A vagueness challenge is based upon the Due Process Clause. *See Hallandale Professional Firefighters Local 2238 v. City of Hallandale,* 922 F.2d 756, 760 n. 4 (11th Cir.1991). Top Shelf assumedly asserts involvement of the First Amendment because of its marginal protection of nude dancing.

the allegedly vague definition of "mainstream."

### 3. The arbitrary and capricious claim

■ Finally, Top Shelf challenges 6–1222(h)'s exemption for mainstream establishments "which derive less than twenty percent of its [sic] gross receipts from the sale of alcoholic beverages." It avers that the 20% limit is unsupported by empirical evidence or data, and as such is an arbitrary and capricious standard violative of the First Amendment and the Due Process Clause.[10] Since Top Shelf's argument is not well fleshed out, some discussion of the Due Process Clause is necessary.

■ The Due Process Clause protects against the deprivation of life, liberty or property without due process of law. U.S. Const. amend. XIV. Procedural due process requires that a party receive notice and opportunity to be heard before the state deprives it of a property interest, while substantive due process is violated when governmental actions would be unjustified even if stringent procedural safeguards were followed. *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987). In order to maintain either a procedural or substantive due process claim, Top Shelf first must demonstrate that the City deprived it of a constitutionally protected property or liberty interest. *Todorov v. DCH Healthcare Auth.*, 921 F.2d 1438 (11th Cir.1991). A property interest involves something in which a party has a " 'legitimate claim of entitlement,' " *Id.* at 1463, *citing Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), and may be created by contract, statute or ordinance. *See, e.g., Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). A liberty interest implicates a " 'stigmatiz[ation]' in connection with a denial of a right or status previ-

ously recognized under state law.' " *Todorov*, 921 F.2d at 1464, *citing Moore v. Otero*, 557 F.2d 435, 437 (5th Cir.1977).

Top Shelf has not demonstrated or argued that it holds any constitutionally protected property or liberty interest in the operation of the mainstream exception, or that it has been deprived of any constitutionally protected property or liberty interest it possesses by the allegedly arbitrary and capricious standard set by the City. First, Top Shelf has no constitutionally protected property interest in its liquor license. While O.C.G.A. § 3–3–2 establishes state-law procedural requirements that govern the decision to grant or deny a liquor license, it does not create a protectible property interest. *Scoggins v. Moore*, 579 F.Supp. 1320 (N.D.Ga.), *aff'd*, 747 F.2d 1466 (11th Cir.1984); *see also Cheek v. Gooch*, 779 F.2d 1507 (11th Cir.1986) (per curiam). In any event, the City has not stripped Top Shelf of its liquor license, but has placed a constitutionally permissible limitation upon Top Shelf's use of that license. Second, Top Shelf has shown no stigmatization " 'which might seriously damage [its] standing and associations in [its] community' or foreclose '[its] freedom to take advantage of other [business opportunities]' " necessary to create a protectible liberty interest. *Scoggins*, 579 F.Supp. at 1324 (citations omitted). Without a threshold demonstration of either a liberty or property interest, this Court will not determine whether the City's enactment of the 20% standard was arbitrary, capricious, and in violation of the Due Process Clause.

### CONCLUSION

Given the broad power conferred upon governing bodies by the Twenty-first Amendment, the City of Savannah constitutionally may distinguish between mainstream and

---

10. Top Shelf's brief introduces the issue as one involving the Due Process Clause. *See* Mem. of Law in Support of Compl. and Mot. for a Prelim. Inj. at 2. In the subsequent discussion, Top Shelf claims a violation of the First and Fourteenth Amendments by the City's allegedly arbitrary and capricious acts. *Id.* at 9. Despite the single mention of the First Amendment, the Court believes that Top Shelf intended to assert a Due Process violation; the terms "arbitrary and

capricious" generally are used in conjunction with Due Process analysis. *See, e.g., Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985) (continued enrollment in public university); *Corn v. City of Lauderdale Lakes*, 997 F.2d 1369 (11th Cir.1993) (land use); *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987) (public employment); *Anthony v. Franklin County*, 799 F.2d 681 (11th Cir.1986) (discontinuing public ferry service).

**912**

non-mainstream performances in 6–1222(h). Although Top Shelf is concerned about possibly vague enforcement arising from the use of "mainstream," it has made no showing or claim that it is a mainstream establishment concerned about the applicability of the mainstream exception to its activities. Finally, while Top Shelf contends that the 20% figure established by the City is an arbitrary and capricious number, it has not demonstrated that this arbitrary standard affects any constitutionally protected property or liberty interest. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that judgment be and is entered for defendants.